IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CYTEK BIOSCIENCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. _______________ |
| v. | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
| BECKMAN COULTER, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

Plaintiff Cytek Biosciences, Inc. ("Cytek" or "Plaintiff") brings this patent infringement action against Defendant Beckman Coulter, Inc. ("Beckman Coulter" or "Defendant").

**NATURE OF THE ACTION**

1. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*., including 35 U.S.C. § 271.

2. Cytek brings this action to seek relief for Beckman Coulter's infringement of Cytek's rights under United States Patent Nos. 12,754,128 ("the '128 patent"); 12,487,167 ("the '167 patent"); 11,913,868 ("the '868 patent"); and 10,739,245 ("the '245 patent") (collectively, "the Asserted Patents"). (Exs. 1-4.)

3. Cytek also brought suit against Beckman Coulter in the United States International Trade Commission on October 8, 2026, asserting some of the same patents at issue here (the '128 patent, the '167 patent, and the '245 patent).

**THE PARTIES**

4. Cytek is a corporation organized and existing under the laws of Delaware, with a principal place of business at 47215 Lakeview Boulevard, Fremont, California 94538. Cytek is the owner of all right, title, and interest in and to the Asserted Patents.

5. On information and belief, Beckman Coulter is a corporation organized and existing under the laws of Delaware, with a principal place of business at 250 South Kraemer Boulevard, Brea, California 92821.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction over these claims under 28 U.S.C. §§ 1331 and 1338(a) and the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*.

7. This Court has personal jurisdiction over Defendant at least because Defendant is and has at all relevant times been incorporated in Delaware. Further, Defendant has committed, aided, abetted, induced, contributed to, and/or participated in the commission of patent infringement that has led to foreseeable harm and injury to Cytek in Delaware. Further, Defendant has had at all relevant times substantial contacts with the forum as a consequence of its incorporation in Delaware and, upon information and belief, conducting business in Delaware.

8. Venue is proper in this District under 28 U.S.C. § 1400(b) because Defendant is and has at all relevant times been a Delaware corporation that, upon information and belief, conducts and has conducted business in Delaware. A patent infringement action between the same parties, *Beckman Coulter, Inc. v. Cytek Biosciences, Inc.*, C.A. No. 24-945 (CFC) (D. Del.), is currently pending before this Court.

**FACTUAL ALLEGATIONS**

9. Cytek was founded in 1992 in Fremont, California. Cytek is now a world leading cell analysis solutions company that is continually innovating to advance the next generation of cell analysis tools by delivering technology capable of providing high-resolution, high-content and high-sensitivity cell analysis using its patented full spectrum (also referred to as spectrum or

spectral)[1] flow cytometry technology. Cytek's innovation is in a novel technological approach to cell analysis. Specifically, Cytek's patented Full Spectrum Profiling technology provides a full spectrum of fluorescence signatures from multiple lasers to distinguish fluorescent tags on single cells. Cytek's Full Spectrum Profiling technology optimizes sensitivity and accuracy through its unique optical and electronic designs that utilize an innovative method of light detection and distribution to a specifically selected number and type of detectors.

10. Cytek's core mission is to enable the world to improve life through scientific innovation. To that end, Cytek is committed to providing powerful solutions that allow scientists to rapidly and efficiently obtain deep biological insights through high-quality, high-parametric datasets.

11. Cytek's spectral products provide powerful tools for scientific innovation and advancement. Cytek pioneered the widespread adoption of spectral flow cytometry in the field by launching its Aurora Flow Cytometry System as the first commercially available full spectrum flow cytometer using "avalanche" photodiode technology. Cytek's spectral flow cytometry systems have been highly successful, adopted by scientists across the United States and around the world to enhance the complexity and power of their experiments. As of 2025, Cytek's spectral flow cytometers have been referenced in more than 3,200 peer-reviewed publications. Cytek's technology is backed by a comprehensive suite of patent protection, which includes the Asserted Patents.

---

[1] As used herein, the terms "full spectrum flow cytometry," "spectrum flow cytometry," and "spectral flow cytometry" are used interchangeably. These terms describe flow cytometry systems, which capture and detect the full emission spectrum of fluorescent molecules using arrays of highly sensitive light detectors, as contrasted with conventional flow cytometry, which measures light at specific wavelength ranges in a one-detector-per-fluorochrome approach.

12. The Asserted Patents claim certain novel technologies within the field of flow cytometry systems. Flow cytometers are complex, precision scientific instruments that analyze cells or other biological samples. Cells are first stained with fluorescent dyes and then directed through a "flow cell" by the use of advanced fluidics, where the cells are, one-by-one, illuminated with a light source such as a laser, at rates up to tens of thousands of cells per second. The fluorescent dyes present in the cells respond to laser light illumination by emitting fluorescent light which is detected by exquisitely sensitive optical components. In this way, individual cells can be optically analyzed to determine whether they emit fluorescent signals, among other characteristics such as size and shape. This same technology also provides scientists with the ability to sort individual cells from a larger population, based on these same characteristics, with a sorting flow cytometer (also referred to as a "cell sorter").

13. For many decades, "conventional" flow cytometry employed light detection systems that were inherently limited. Fluorescent light emitted by illuminated cells was captured by detection modules containing one or a few light detectors, each of which was associated with a specific "bandpass" filter which only allowed light of a narrow wavelength range to reach its associated detector. As a result, experiments were limited in the number of different fluorochromes that could be used, because each fluorochrome was assigned to a specific detector configured to look only for light in the wavelength in the expected "peak" of emission of a given fluorochrome. Further, scientists could not employ two different fluorescent dyes in the same experiment if they emitted fluorescent light at similar wavelengths, because the instruments could not effectively distinguish between those similar-wavelength dyes, as shown in the figure below. As a result, by limiting the number and type of fluorochromes that can be used, conventional flow

cytometry places an inherent limit on the complexity of experiments scientists can conveniently perform.




Figure 1: Spectrum plots from a conventional spectrum viewer shows heavy overlap between APC and Alexa Fluor 647.

14. Spectral flow cytometry systems, as claimed in the Asserted Patents, capture and detect the full emission spectrum of fluorescent molecules using highly sensitive light detector arrays, as contrasted with conventional flow cytometry, which uses discrete bandpass filters to measure a specific wavelength range in a one-detector-per-fluorochrome approach. This revolutionary spectral approach to flow cytometry, pioneered by Cytek, radically enhances the power of flow cytometry by enabling scientists to detect a much higher number of different fluorochromes in a single sample run than would be possible with conventional flow cytometry. Experiments containing many dozens of different fluorochromes can be analyzed in a single pass through the spectral flow cytometer because the full emission spectrum for each dye is captured by the detector arrays, as shown in the example figure below. Unmixing algorithms are then applied computationally to robustly determine the spectral signature for each fluorochrome, even when multiple fluorochromes with similar peak emission spectra are analyzed in a single experiment.




**Figure 2**: Spectrum plots from a four-laser Cytek Aurora™ system show distinct signatures for APC and Alexa Fluor 647.

15. Spectral flow cytometry, as claimed in the Asserted Patents, is highly useful to scientists because it enables them to perform much more complex experiments that provide new insights into biological systems and human diseases. For example, Cytek's spectral flow cytometry systems, which are embodiments of the claimed inventions, have enabled researchers to analyze 40 distinct immune system functions in a single experiment – a feat which would have been impossible using conventional flow cytometry.

16. Cytek's spectral flow cytometry systems include its Aurora product, which was the first commercially available full spectrum flow cytometer using "avalanche" photodiode technology. The Aurora system employs up to five distinct lasers and detection arrays with up to 64 individual detectors, enabling scientists to employ very large panels of up to 40 or more fluorochromes in a single experiment. Cytek's Aurora product is also available in a "CS" or Cell Sorter configuration, which allows scientists to sort individual cells meeting certain criteria from larger populations as part of their experiment. Cytek's newest Aurora product is the Aurora Evo system, which enhances the spectral capabilities of Aurora with improvements in sample throughput, small particle detection, automated instrument maintenance, and data harmonization.

Cytek also offers a spectral flow cytometry system with three lasers and up to 38 detectors called Northern Lights, which provides many of the same advantages as Aurora over conventional flow cytometry, but in a smaller and more economical format.

17. Beckman Coulter's conventional flow cytometry systems have a large installed user base in the United States and throughout the world. However, until recently, Beckman Coulter had been unable to meet scientists' demand for a spectral flow cytometry system. In an effort to solve this problem, Beckman Coulter copied Cytek's revolutionary patented technologies for spectral flow cytometry and incorporated them into its infringing products, first launched in March 2025 as Beckman Coulter's "mosaic" products (the "Infringing Products"). The Infringing Products represent Beckman Coulter's belated efforts to enter the field of spectral flow cytometry using the inventions of the Asserted Patents. Its mosaic 88 and mosaic 63 products are optical detection systems which are connected via fiber optic connections to Beckman Coulter's conventional CytoFLEX flow cytometers. When combined, the CytoFLEX+mosaic systems employ up to six lasers and up to 81 fluorescence detectors to provide spectral flow cytometry capabilities to users.

18. Defendant paved its entry into the field of spectral flow cytometry by copying Cytek's patented technologies in its Aurora product. In December 2019, Defendant held an initial meeting for its internal "Rainbow" project to develop its own spectral flow cytometer, where Defendant considered (and ultimately pursued) Cytek's approach to spectral flow cytometry. (Ex. 38, Trial Tr. 795:8-796:21.) Defendant then purchased an Aurora in September 2020 to assist in the development of a copycat product, which it subsequently received at its Miami office in October 2020.

CYTEK
TRANSCEND THE CONVENTIONAL

Quotation Ref: AUR-00002352-9-9-2020-ver00

Quote Date: September 09, 2020
Quote Valid Until: November 08, 2020

| | | | |
|---|---|---|---|
| Bill To Name | Beckman Coulter | Ship To Name | Beckman Coulter |
| Billing Address | 11800 SW 147th Ave Bldg 1, Floor 2, Rm K05<br>Miami<br>Florida, 33196<br>United States | Shipping Address | 11800 SW 147th Ave Bldg 1, Floor 2, Rm K05<br>Miami<br>Florida, 33196<br>United States |
| Prepared By (Name) | Katherine Fonte | Contact Name | James Tung |
| Prepared By (Phone) | +1 6783877135 | Phone | 305-380-2733 |
| Prepared By (Email) | kfonte@cytekbio.com | Email | jwtung@beckman.com |
| Prepared By (Fax) | | Fax | |

| Item | Description | Product Number | Qty | List Price USD | Net Price USD | Ext.Price USD |
|---|---|---|---|---|---|---|
| 1 | Cytek™ Aurora | | | | | |
| | Cytek Aurora 5 Laser UV/V/B/YG/R (64 + 3 Channel)<br>Includes: • 5-laser flow cytometer • Workstation (computer, monitor, keyboard, mouse) • 1 additional copy of SpectroFloTM • Fluidic reservoirs • QC and consumable parts kit • 1-year on-site warranty | N7-00003 | 1.00 | 399,000.00 | 399,000.00 | 399,000.00 |
| | Cytek Auto Micro-Sampling System (AMS) | N7-00020 | 1.00 | 25,000.00 | 25,000.00 | 25,000.00 |
| | 2 day on-site training<br>Two-day training: lectures on the fundamentals of spectral cytometry and panel design w/ hands-on operator training (max. 4 students for operator training) | N9-90000-0A | 1.00 | 5,225.00 | 0.00 | 0.00 |

| | |
|---|---|
| **Sub-Total** | **424,000.00** |
| Shipping and Handling | 2,400.00 |
| **Grand Total** | **426,400.00** |

(Ex. 40, DTX-2447.0002; *see also* Ex. 39, Trial Tr. at 595:2-596:4 (Cytek's CEO confirming Defendant received Aurora on October 14, 2020); Ex. 38, Trial Tr. at 787:12-23.)

19. Defendant's internal documentation from December 2020 shows that Defendant took purposeful steps not only to benchmark its development of a copycat product against Aurora, but also to reverse-engineer Aurora's unmixing algorithm and the detector channel bin widths, features of Cytek's patented full spectral flow cytometry technologies.

## Risk registry

| # | Risk Description (Risk: what may or could happen) | Risk Impact | Impact Severity | Probability | Overall Rating | Owner | Mitigations (Actions to reduce event probability or impact) | Mitigation Due Date | Trigger Date | Contingency | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Do narrow band filters allow us to maintain superior sensitivity of CytoFLEX? | high impact. | high | medium | 50 | Jane Kim/Milan Popovic | reduce noise | 12.30.2020 | | | Open |
| 2 | What is the right bin width to get similar resolution as Aurora Cytek? | high impact. | high | medium | 50 | Jane Kim/Milan Popovic/Jimmy Tung | similar bins as Aurora | 03.30.2021 | | | Open |
| 3 | Optimization of Spectral Gain settings based on Spread Matrix requirements may affect MESF and SI values | high impact. | high | medium | 50 | Jane Kim/Milan Popovic/Jimmy Tung | Perform panel design tests and identify Gain calibration settings based on 3M, revisit ME3F and SI | 03.30.2021 | | | Open |
| 4 | What is the optimal design of WDM to minimize optical losses with larger number of spectral bins. | high impact. | high | medium | 50 | Jane Kim | optical simulation design, rapid prototyping | 03.30.2021 | | ME support for rapid prototyping | Issue |
| 5 | Reverse engineering of the 8-12 Cytek colors algorithm is very complex | Then a delay in project schedule will be impacted by 3 weeks | High | Medium | 50 | Robert | Investigate using 2 colors first and then advancing to more colors. | 12/30/2020 | 1/22/2021 | Stop comparing algorithm to Cytek and create our own algorithm | Open |
| 6 | Unmixing algorithm 30 bins: how to calculate SI, how to calculate MESF for spectral flow. | high impact. | medium | medium | 25 | John Riley | learn others product: FCS express, Aurora | 03.30.2021 | | | Open |

## Next steps

1. Raw data comparison between **<u>single-brightest peaks</u>** Rainbow vs. Aurora CD4 antibodies, 2 pear each laser
2. Side by side comparison of SI in CytoFLEX LX vs. Aurora vs. Rainbow based on **<u>Virtual filters</u>**
3. Raw data comparison between **<u>signal-peak smallest MESF</u>** peaks Rainbow vs. Aurora vs. CytoFLEX
4. Run color panel in 30bins Rainbow and 30 bins Aurora.
5. Learning loop of Aurora work flow. In process of reverse engineering of Cytek Unmixing algorithm.
6. Develop in house Unmixing algorithm.

(Ex. 41, DTX-0105.0004, -0017 (red annotations added); *see also* Ex. 38, Trial Tr. at 788-789.)

20. On information and belief, Defendant used and incorporated the information gleaned from reverse-engineering the patented technology in Cytek's Aurora in its subsequent development of the Infringing Products.

## The Asserted Patents

21. The ’128 patent (Exhibit 1 hereto), entitled “Methods for Compact Multi-Color Flow Cytometers Having Compact Detection Modules,” was filed on July 14, 2021 and issued on October 6, 2026 to inventors Ming Yan, Yung-Chieh Hsieh, David Vrane, Eric Chase, and Wenbin Jiang.

22. The ’167 patent (Exhibit 2 hereto), entitled “Methods and Apparatus for Full Spectrum Flow Cytometer,” was filed on June 26, 2021 and issued on December 2, 2025 to inventors Maria Jaimes, Zhenyu Zhang, Jian Zhou, Huimin Gu, Qing Shao, Ming Yan, and David Vrane.

23. The ’868 patent (Exhibit 3 hereto), entitled “Compact Detection Module for Flow Cytometers,” was filed on May 10, 2021 and issued on February 27, 2024 to inventors Ming Yan, Yung-Chieh Hsieh, David Vrane, and Eric Chase.

24. The ’245 patent (Exhibit 4 hereto), entitled “Compact Multi-Color Flow Cytometer,” was filed on April 26, 2017 and issued on August 11, 2020 to inventors David Vrane, Ming Yan, Eric Chase, and Wenbin Jiang.

25. Cytek owns all rights, title, and interest in and to the Asserted Patents.

## Defendant’s Infringing Products

26. Beckman Coulter makes, uses, sells, supplies, offers for sale, and/or imports Infringing Products, including at least the Beckman Coulter mosaic 88 and mosaic 63 flow cytometry detector module systems.

27. The Infringing Products further include any products, components, or convoyed or derivative products that were imported, made, used, sold, and/or offered for sale by or on behalf of Beckman Coulter in connection with and/or as part of Beckman Coulter mosaic 88 and mosaic 63 flow cytometry detector module systems and any other of its products that embody like

functionality, including without limitation the Beckman Coulter CytoFLEX S and CytoFLEX LX flow cytometry systems (and associated components and reagents) which, when combined with the Beckman Coulter mosaic 88 and mosaic 63 flow cytometry detector module systems, infringe the Asserted Patents.

28. By selling, manufacturing, using, offering for sale in the United States and/or importing into the United States the Infringing Products, Beckman Coulter has infringed and continues to infringe the Asserted Patents, both directly and indirectly, and has benefited from doing so.

29. Exemplary infringement charts, attached as Exhibits 5-6, detail Defendant's infringement of at least claims 1, 11, 15-21, and 23-29 of the '128 patent. An exemplary infringement chart, attached as Exhibit 7, details Defendant's infringement of at least claims 1-4, 6, and 8-20 of the '167 patent. An exemplary infringement chart, attached as Exhibit 8, details Defendant's infringement of at least claim 3 of the '868 patent. Exemplary infringement charts, attached as Exhibits 9-10, detail Defendant's infringement of at least claim 21 of the '245 patent. Exhibits 20-34, cited in these exemplary infringement charts, include exemplary evidence of Defendant's infringement of the Asserted Patents. These descriptions are not intended to limit Cytek's right to amend, supplement, or modify these descriptions or any other analysis, description, or claim chart or allege that other activities of Defendant infringe the identified claims or any other claims of the Asserted Patents or other patents.

30. On information and belief, Beckman Coulter knew of, should have known of, and/or has been willfully blind to the Asserted Patents, and its infringement thereof. Defendant's willfulness is further shown by its copying and reverse-engineering of Cytek's Aurora product as alleged in this Complaint.

31. Beckman Coulter has had actual knowledge of the ’128 patent and the application leading to it, prior to the filing of this Complaint. For example, Cytek notified Beckman Coulter of the ’128 patent and its infringing activities by letter dated October 6, 2026. (Ex. 36.) Further, on information and belief, Beckman Coulter regards Cytek as a competitor in the flow cytometer space, has sued Cytek for patent infringement, and has long actively monitored Cytek’s patent activities. Through this monitoring, Beckman Coulter has long known of the patent family of which the ’128 patent is a part, and has been actively monitoring Cytek’s prosecution of patent applications in this family. For example, Beckman Coulter has long known of Cytek’s asserted ’245 patent, which was filed as U.S. Patent Application 15/498,397. The ’128 patent is a member of the same patent family as the asserted ’245 patent; both patents claim priority to U.S. Provisional Application 62/327,946. Defendant’s knowledge of the ’245 patent is shown, for example, by Defendant’s citation of the ’245 patent in the ongoing civil action that Beckman Coulter filed against Cytek. (*See Beckman Coulter, Inc. v. Cytek Biosciences, Inc.*, C.A. No. 24-945 (CFC) (D. Del. Jan. 9, 2025) (D.I. 42 (“Beckman Coulter First Amended Complaint”), ¶ 19).) As a further example, Defendant has had actual knowledge since no later than December 19, 2025 of U.S. Patent Application Serial No. 17/375,988, which led to the ’128 patent, as shown through citation by Beckman Coulter’s expert of Cytek’s online patent marking page, which lists several Cytek patents and applications including 17/375,988. (*See* Ex. 37, *Beckman Coulter, Inc. v. Cytek Biosciences, Inc.*, C.A. No. 24-945 (CFC) (D. Del.) (D.I. 420-4, Cytek Opp. to Beckman Coulter’s MIL No. 1, Ex. 3 at 62 (¶127); *see also id.* at 78, 98-99, 116, 138, 156, 160, 191-194, 196-199, 216-217).)

32. Beckman Coulter has had actual knowledge of the ’167 patent, and the application leading to it, prior to the filing of this Complaint. For example, Cytek notified Beckman Coulter

of the ’167 patent and its infringing activities by letter dated October 6, 2026. (Ex. 36.) Further, on information and belief, Beckman Coulter regards Cytek as a competitor in the flow cytometer space, has sued Cytek for patent infringement, and has long actively monitored Cytek’s patent activities. Through this monitoring, Beckman Coulter has long known of the patent family of which the ’167 patent is a part, and has been actively monitoring Cytek’s prosecution of patent applications in this family. For example, Beckman Coulter has long known of the publication of the application that led to Cytek’s asserted ’167 patent, U.S. Published Patent Application 2022/0082489A1, which was cited in the International Bureau of the World Intellectual Property Organization’s January 31, 2025 International Search Report in Beckman Coulter’s patent application PCT/US/2024/050571. (Ex. 35 at 4 (identifying U.S. 2022/0082489A1 as a family member of U.S. 2022/0082488A1).) As a further example, Beckman Coulter has had actual knowledge since no later than December 19, 2025 of U.S. Patent Application Serial No. 17/304,844, which led to the ’167 patent, as shown through citation by Beckman Coulter’s expert of Cytek’s online patent marking page, which lists several Cytek patents and applications including 17/304,844. (*See* Ex. 37, *Beckman Coulter, Inc. v. Cytek Biosciences, Inc.*, C.A. No. 24-945 (CFC) (D. Del.) (D.I. 420-4, Cytek Opp., Ex. 3 at 62 (¶127); *see also id.* at 78, 98-99, 116, 138, 156, 160, 191-194, 196-199, 216-217).)

33. Beckman Coulter has had actual knowledge of the ’868 patent, and the application leading to it, prior to the filing of this Complaint. For example, Cytek notified Beckman Coulter of the ’868 patent and its infringing activities by letter dated October 6, 2026. (Ex. 36.) Further, on information and belief, Beckman Coulter regards Cytek as a competitor in the flow cytometer space, has sued Cytek for patent infringement, and has long actively monitored Cytek’s patent activities. Through this monitoring Beckman Coulter has long known of the patent family of which

the ’868 patent is a part, and has been actively monitoring Cytek’s prosecution of patent applications in this family. For example, Beckman Coulter’s U.S. patent application 18/847,394, which published as U.S. 2025/0198904, cites Cytek’s published patent application U.S. 2021/0262917, which corresponds to Cytek’s ’868 patent. As a further example, Beckman Coulter has had actual knowledge of the ’868 patent since no later than December 19, 2025, when Beckman Coulter’s expert cited it in its expert report. (*See* Ex. 37, *Beckman Coulter, Inc. v. Cytek Biosciences, Inc.*, C.A. No. 24-945 (CFC) (D. Del.) (D.I. 420-4, Cytek Opp., Ex. 3 at 62 (¶127); *see also id.* at 78, 98-99, 116, 138, 156, 160, 191-194, 196-199, 216-217).)

34. Cytek has, at least since October 31, 2025, marked its full spectrum flow cytometry products with at least the ’245 and ’868 patents via product labelling and its virtual patent marking webpage, in compliance with the requirements of 35 U.S.C. § 287(a).

35. Beckman Coulter has had actual knowledge of the ’245 patent, and the patent application leading to it, prior to the filing of this Complaint. For example, Cytek notified Beckman Coulter of the ’245 patent and its infringing activities by letter dated October 6, 2026. (Ex. 36.) Further, on information and belief, Beckman Coulter regards Cytek as a competitor in the flow cytometer space, has sued Cytek for patent infringement, and has long actively monitored Cytek’s patent activities. Through this monitoring Beckman Coulter has long known of the patent family of which the ’245 patent is a part, and has been actively monitoring Cytek’s prosecution of patent applications in this family. For example, Beckman Coulter’s knowledge of the ’245 patent is shown, for example, by its citation to the ’245 patent in the ongoing civil action. (*See* Beckman Coulter First Amended Complaint ¶ 19.)

36. As the direct and proximate result of Beckman Coulter’s conduct, Cytek has suffered, and if Beckman Coulter’s conduct is not enjoined, will continue to suffer, severe

competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial. Cytek and Defendant are direct competitors in the flow cytometry market, and Defendant's sale of infringing spectral flow cytometry products causes ongoing harm to Cytek's market position, customer relationships, and pricing power that cannot be adequately remedied by monetary damages alone. Because Cytek's remedy at law is inadequate, Cytek seeks, in addition to damages, injunctive relief. Cytek pioneered the spectral flow cytometry market through substantial investment in research and development, and Defendant's unauthorized use of Cytek's patented technology to compete in that same market causes continuing irreparable harm absent injunctive relief.

**COUNT 1**

**(INFRINGEMENT OF THE '128 PATENT)**

37. Plaintiff incorporates each of the above paragraphs as though fully set forth herein.

38. On information and belief, Defendant, directly or through the actions of its employees, agents, distributors, divisions, and/or subsidiaries, has infringed and continues to infringe one or more of the claims of the '128 patent, including at least claim 1 of the '128 patent, directly, indirectly, literally and/or by equivalents under 35 U.S.C. §§ 1 *et seq.*, including, but not limited to, § 271 by, among other things, making, using (including during research and development activities and product testing), selling, supplying, offering for sale the Infringing Products in the United States and/or importing the Infringing Products within the United States, and/or inducing or contributing to such acts, without authority. To the extent Defendant asserts that any limitation is not literally met, any differences between the Infringing Products and the claims of the '128 patent are insubstantial and one or more elements of each of Defendant's Infringing Products matches the function, way, and result of that claim limitation.

39. For example, the Infringing Products meet each element of, and infringe, claim 1, which states:

> A flow cytometer system comprising:
>
> a laser system having a plurality of different lasers to emit a plurality of differing laser beams;
>
> a flow cell assembly positioned to receive the plurality of differing laser beams at an interrogation region of a flow channel where fluoresced cells in a fluidics stream scatter the plurality of differing laser beams and emit fluorescent light;
>
> at least one optical fiber of at least one fiber assembly positioned to collect the fluorescent light at a first end and direct the fluorescent light towards a second end; and
>
> at least one light detection module to receive the fluorescent light from the second end of the at least one optical fiber of the at least one fiber assembly, the at least one light detection module including
>
> a first optical array having
>
> a transparent block,
>
> a first plurality of reflection surfaces in a row coupled to a first side of the transparent block, and
>
> a first plurality of optical filters in a row coupled to a second side of the transparent block opposite the first side; and
>
> a first plurality of N detector channels in a row forming a first detector chain adjacent the first optical array, wherein N is eight (8) or more and each detector channel includes a focusing lens, and a photodiode.

40. Defendant infringes each element of at least claim 1 of the ’128 patent. As an example, infringement charts, detailing Defendant’s infringement of claim 1 of the ’128 patent, are attached as Exhibits 5-6. These charts are not intended to limit Cytek’s right to modify the charts or allege that other activities of Defendant infringe the identified claims or any other claims of the Asserted Patents. Exhibits 5-6 are hereby incorporated by reference in their entirety. Each claim element in Exhibits 5-6 that is mapped to the Infringing Products shall be considered an

allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

41. Defendant also has actively, knowingly, and intentionally induced infringement of the ’128 patent under 35 U.S.C. § 271(b), and continues to actively, knowingly and intentionally induce such infringement by actively encouraging others to make, use, offer to sell, sell, and/or import the Infringing Products in the United States. On information and belief, as alleged in this Complaint, Defendant had actual knowledge of the ’128 patent before the filing of this Complaint. Defendant actively promotes the sale, use, and importation of Defendant’s infringing spectral flow cytometry devices in marketing materials, technical specifications, data sheets, web pages on its websites, press releases, and user manuals, as well as at trade shows and through its sales and distribution channels that encourage infringing sales, offers to sell, and importation of the Infringing Products. (*See, e.g*., Exs. 11-19.) By these actions, Defendant has had the specific intent to induce, or was willfully blind to inducing, infringement of the ’128 patent.

42. On information and belief, Defendant also contributes to infringement of the ’128 patent by others, by providing the Infringing Products, which are specially made or adapted for use to infringe one or more claims of the ’128 patent and are not staple articles of commerce suitable for substantial noninfringing use. For example, as detailed in the exemplary infringement charts provided with this Complaint, (*see* Exs. 5, 6) claim 1 of the ’128 patent is infringed by the combination of Defendant’s mosaic products with Defendant’s CytoFLEX flow cytometer products. As alleged in this Complaint, when combined, the CytoFLEX+mosaic systems employ up to six lasers and up to 81 fluorescence detectors to provide spectral flow cytometry capabilities to users. Defendant’s mosaic products are especially made for or adapted for use to infringe the ’128 patent, and are not a staple article of commerce, and are not suitable for substantial non-

infringing use. As alleged in this Complaint, Defendant has had actual knowledge of the '128 patent, and has had actual knowledge that the Infringing Products are especially made and/or especially adapted for use in infringing the '128 patent.

43. Defendant's infringement has been willful and deliberate because, on information and belief, Defendant has known of, should have known of, and/or has been willfully blind to the '128 patent and knew of, should have known of, and/or was willfully blind to its infringement but acted despite an objectively high likelihood that such acts would infringe the '128 patent. Defendant's willfulness is further shown by its copying and reverse-engineering of Cytek's Aurora product as alleged in this Complaint.

44. As the direct and proximate result of Defendant's conduct, Cytek has suffered, and if Defendant's conduct is not enjoined, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial. Cytek and Defendant are direct competitors in the flow cytometry market, and Defendant's sale of infringing spectral flow cytometry products causes ongoing harm to Cytek's market position, customer relationships, and pricing power that cannot be adequately remedied by monetary damages alone. Because Cytek's remedy at law is inadequate, Cytek seeks, in addition to damages, injunctive relief. Cytek pioneered the spectral flow cytometry market through substantial investment in research and development, and Defendant's unauthorized use of Cytek's patented technology to compete in that same market causes continuing irreparable harm absent injunctive relief.

## COUNT 2

## (INFRINGEMENT OF THE '167 PATENT)

45. Plaintiff incorporates each of the above paragraphs as though fully set forth herein.

46. On information and belief, Defendant, directly or through the actions of its employees, agents, distributors, divisions, and/or subsidiaries, has infringed and continues to

infringe one or more of the claims of the ’167 patent, including at least claim 1 of the ’167 patent, directly, indirectly, literally and/or by equivalents under 35 U.S.C. §§ 1 *et seq.*, including, but not limited to, § 271 by, among other things, making, using (including during research and development activities and product testing), selling, supplying, offering for sale the Infringing Products in the United States and/or importing the Infringing Products within the United States, and/or inducing or contributing to such acts, without authority. To the extent Defendant asserts that any limitation is not literally met, any differences between the Infringing Products and the claims of the ’167 patent are insubstantial and one or more elements of each of Defendant’s Infringing Products matches the function, way, and result of that claim limitation.

47. For example, the Infringing Products meet each element of, and infringe, claim 1, which states:

> A system for analyzing biological fluids, the system comprising:
>
> a full spectrum flow cytometer having five (5) or more differing lasers each emitting a different wavelength of laser light and four (4) or more associated detector modules providing N individual photo detectors to capture a full spectrum of visible light, wherein N is forty-eight (48) or more and each individual photo detector is a photodiode;
>
> a single labeled biological sample to run through the full spectrum flow cytometer, the single labeled biological sample having over thirty (30) different markers respectively labeled with over thirty (30) and less than N different fluorochrome-conjugated antibodies to generate over thirty (30) and less than N different colors when excited by the five (5) or more lasers of the flow cytometer that can be detected by the four (4) or more associated detector modules with the N individual photo detectors; and
>
> a computer system coupled in communication with the flow cytometer, the computer system having a display device, a storage device, and a processor to execute instructions, wherein the storage device stores data samples from the flow cytometer in response to running the single labeled biological sample through the flow cytometer, and the processor executes instructions to process the stored data samples to generate full spectrum signatures of the fluorescence given off by each marked biological cells in the single labeled biological sample

> with a single run through the flow cytometer, wherein each full spectrum signature is used to determine the type and quantity of the plurality of biological cells in the single labeled biological sample with a single run through the flow cytometer, wherein the display device displays the full spectrum signatures to a user.

48. Defendant infringes each element of at least claim 1 of the ’167 patent. As an example, an infringement chart, detailing Defendant’s infringement of claim 1 of the ’167 patent, is attached as Exhibit 7. This chart is not intended to limit Cytek’s right to modify the chart or allege that other activities of Defendant infringe the identified claims or any other claims of the Asserted Patents. Exhibit 7 is hereby incorporated by reference in its entirety. Each claim element in Exhibit 7 that is mapped to the Infringing Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

49. Defendant also has actively, knowingly, and intentionally induced infringement of the ’167 patent under 35 U.S.C. § 271(b) and continues to actively, knowingly and intentionally induce such infringement by actively encouraging others to make, use, offer to sell, sell, and/or import the Infringing Products in the United States. On information and belief, as alleged in this Complaint, Defendant had actual knowledge of the ’167 patent before the filing of this Complaint. Defendant actively promotes the sale, use, and importation of Defendant’s infringing spectral flow cytometry devices in marketing materials, technical specifications, data sheets, web pages on its websites, press releases, and user manuals, as well as at trade shows and through its sales and distribution channels that encourage infringing sales, offers to sell, and importation of the Infringing Products. (*See, e.g.*, Exs. 11-19.) By these actions, Defendant has had the specific intent to induce, or was willfully blind to inducing, infringement of the ’167 patent.

50. Defendant’s infringement has been willful and deliberate because, on information and belief, Defendant has known of, should have known of, and/or has been willfully blind to the

’167 patent and knew of, should have known of, and/or was willfully blind to its infringement but acted despite an objectively high likelihood that such acts would infringe the ’167 patent. Defendant’s willfulness is further shown by its copying and reverse-engineering of Cytek’s Aurora product as alleged in this Complaint.

51. As the direct and proximate result of Defendant’s conduct, Cytek has suffered, and if Defendant’s conduct is not enjoined, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial. Cytek and Defendant are direct competitors in the flow cytometry market, and Defendant’s sale of infringing spectral flow cytometry products causes ongoing harm to Cytek’s market position, customer relationships, and pricing power that cannot be adequately remedied by monetary damages alone. Because Cytek’s remedy at law is inadequate, Cytek seeks, in addition to damages, injunctive relief. Cytek pioneered the spectral flow cytometry market through substantial investment in research and development, and Defendant’s unauthorized use of Cytek’s patented technology to compete in that same market causes continuing irreparable harm absent injunctive relief.

**COUNT 3**

**(INFRINGEMENT OF THE ’868 PATENT)**

52. Plaintiff incorporates each of the above paragraphs as though fully set forth herein.

53. On information and belief, Defendant, directly or through the actions of its employees, agents, distributors, divisions, and/or subsidiaries, has infringed and continues to infringe one or more of the claims of the ’868 patent, including at least claim 3 of the ’868 patent, directly, indirectly, literally and/or by equivalents under 35 U.S.C. §§ 1 *et seq.*, including, but not limited to, § 271 by, among other things, making, using (including during research and development activities and product testing), selling, supplying, offering for sale the Infringing Products in the United States and/or importing the Infringing Products within the United States,

and/or inducing or contributing to such acts, without authority. To the extent Defendant asserts that any limitation is not literally met, any differences between the Infringing Products and the claims of the '868 patent are insubstantial and one or more elements of each of Defendant's Infringing Products matches the function, way, and result of that claim limitation.

54. For example, the Infringing Products meet each element of, and infringe, claim 3, which states (in independent form):

> An apparatus comprising:
>
> a first light detection module to demultiplex a first fluorescent light in a first range of wavelengths, the first light detection module including
>
> a first plurality of detectors in a first row;
>
> a first transparent block adjacent the first plurality of detectors,
>
> a first plurality of micro-mirrors coupled to a first side of the first transparent block, and
>
> a first plurality of filters in a first row coupled to a second side of the first transparent block opposite the first side, each of the first plurality of filters to reflect light to one of the first plurality of micro-mirrors and pass light of a different wavelength range towards one of the first plurality of detectors;
>
> a second light detection module to demultiplex a second fluorescent light in a second range of wavelengths, the second light detection module including
>
> a second plurality of detectors in a second row;
>
> a second transparent block adjacent the second plurality of detectors,
>
> a second plurality of micro-mirrors coupled to a first side of the second transparent block, and
>
> a second plurality of filters in a second row coupled to a second side of the second transparent block opposite the first side, each of the second plurality of filters to reflect light to one of the second plurality of micro-mirrors and pass light of a different wavelength range towards one of the second plurality of detectors; and

an input channel coupled in light communication with the first light detection module and the second light detection module, the input channel to receive a fluorescent light beam and split it into the first fluorescent light in the first range of wavelengths and the second fluorescent light in the second range of wavelengths.

55. Defendant infringes each element of at least claim 3 of the ’868 patent. As an example, an infringement chart, detailing Defendant’s infringement of claim 3 of the ’868 patent, is attached as Exhibit 8. This chart is not intended to limit Cytek’s right to modify the chart or allege that other activities of Defendant infringe the identified claims or any other claims of the Asserted Patents. Exhibit 8 is hereby incorporated by reference in its entirety. Each claim element in Exhibit 8 that is mapped to the Infringing Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

56. Defendant also has actively, knowingly, and intentionally induced infringement of the ’868 patent under 35 U.S.C. § 271(b) and continues to actively, knowingly, and intentionally induce such infringement by actively encouraging others to make, use, offer to sell, sell, and/or import the Infringing Products in the United States. On information and belief, as alleged in this Complaint, Defendant had actual knowledge of the ’868 patent before the filing of this Complaint. Defendant actively promotes the sale, use, and importation of Defendant’s infringing spectral flow cytometry devices in marketing materials, technical specifications, data sheets, web pages on its websites, press releases, and user manuals, as well as at trade shows and through its sales and distribution channels that encourage infringing sales, offers to sell, and importation of the Infringing Products. (*See, e.g.*, Exs. 11-19.) By these actions, Defendant has had the specific intent to induce, or was willfully blind to inducing, infringement of the ’868 patent.

57. On information and belief, Defendant also contributes to infringement of the ’868 patent by others, by providing the Infringing Products, which are specially made or adapted for

use to infringe one or more claims of the ’868 patent and are not staple articles of commerce suitable for substantial noninfringing use. For example, as detailed in the exemplary infringement charts provided with this Complaint, (Ex. 8) claim 3 of the ’868 patent is infringed by the combination of Defendant’s mosaic products with Defendant’s CytoFLEX flow cytometer products. As alleged in this Complaint, when combined, the CytoFLEX+mosaic systems employ up to six lasers and up to 81 fluorescence detectors to provide spectral flow cytometry capabilities to users. Defendant’s mosaic products are especially made for or adapted for use to infringe the ’868 patent, and are not a staple article of commerce, and are not suitable for substantial non-infringing use. As alleged in this Complaint, Defendant has had actual knowledge of the ’868 patent, and has had actual knowledge that the Infringing Products are especially made and/or especially adapted for use in infringing the ’868 patent.

58. Defendant’s infringement has been willful and deliberate because, on information and belief, Defendant has known of, should have known of, and/or has been willfully blind to the ’868 patent and knew of, should have known of, and/or was willfully blind to its infringement but acted despite an objectively high likelihood that such acts would infringe the ’868 patent. Defendant’s willfulness is further shown by its copying and reverse-engineering of Cytek’s Aurora product as alleged in this Complaint.

59. As the direct and proximate result of Defendant’s conduct, Cytek has suffered, and if Defendant’s conduct is not enjoined, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial. Cytek and Defendant are direct competitors in the flow cytometry market, and Defendant’s sale of infringing spectral flow cytometry products causes ongoing harm to Cytek’s market position, customer relationships, and pricing power that cannot be adequately remedied by monetary damages alone.

Because Cytek's remedy at law is inadequate, Cytek seeks, in addition to damages, injunctive relief. Cytek pioneered the spectral flow cytometry market through substantial investment in research and development, and Defendant's unauthorized use of Cytek's patented technology to compete in that same market causes continuing irreparable harm absent injunctive relief.

**COUNT 4**

**(INFRINGEMENT OF THE '245 PATENT)**

60. Plaintiff incorporates each of the above paragraphs as though fully set forth herein.

61. On information and belief, Defendant, directly or through the actions of its employees, agents, distributors, divisions, and/or subsidiaries, has infringed and continues to infringe one or more of the claims of the '245 patent, including at least claim 21 of the '245 patent, directly, indirectly, literally and/or by equivalents under 35 U.S.C. §§ 1 *et seq.*, including, but not limited to, § 271 by, among other things, making, using (including during research and development activities and product testing), selling, supplying, offering for sale the Infringing Products in the United States and/or importing the Infringing Products within the United States, and/or inducing or contributing to such acts, without authority. To the extent Defendant asserts that any limitation is not literally met, any differences between the Infringing Products and the claims of the '245 patent are insubstantial and one or more elements of each of Defendant's Infringing Products matches the function, way, and result of that claim limitation.

62. For example, the Infringing Products meet each element of, and infringe, claim 21, which states (in independent form):

> A flow cytometry system, comprising:
>
> a laser system for emitting laser beams;
>
> a flow cell assembly positioned to receive the laser beams at an interrogation region of a fluidics stream where fluoresced cells scatter the laser beams into fluorescent light;

a fiber assembly positioned to collect the fluorescent light; and

a receiver assembly positioned to receive the fluorescent light from the fiber assembly, wherein the receiver assembly includes

a photodiode detector array positioned to receive the fluorescent light, wherein the photodiode detector array includes a plurality of channels;

trans-impedance amplifier circuits configured to convert input current from the photodiode detector array into an output voltage signal for each channel of the plurality of channels in the photodiode detector array; and

analog-to-digital converters coupled to the trans-impedance amplifier circuits, wherein each trans-impedance amplifier circuit is coupled to a different analog-to-digital converter;

wherein the photodiode detector array comprises a plurality of avalanche photodiodes (APD); and

wherein the detector array size is at least sixteen channels.

63. Defendant infringes each element of at least claim 21 of the ’245 patent. As an example, infringement charts, detailing Defendant’s infringement of claim 21 of the ’245 patent, are attached as Exhibits 9-10. These charts are not intended to limit Cytek’s right to modify the charts or allege that other activities of Defendant infringe the identified claims or any other claims of the Asserted Patents. Exhibits 9-10 are hereby incorporated by reference in their entirety. Each claim element in Exhibits 9-10 that is mapped to the Infringing Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

64. Defendant also has actively, knowingly, and intentionally induced infringement of the ’245 patent under 35 U.S.C. § 271(b) and continues to actively, knowingly and intentionally induce such infringement by actively encouraging others to make, use, offer to sell, sell, and/or import the Infringing Products in the United States. On information and belief, as alleged in this

Complaint, Defendant had actual knowledge of the ’245 patent before the filing of this Complaint. Defendant actively promotes the sale, use, and importation of Defendant’s infringing spectral flow cytometry devices in marketing materials, technical specifications, data sheets, web pages on its websites, press releases, and user manuals, as well as at trade shows and through its sales and distribution channels that encourage infringing sales, offers to sell, and importation of the Infringing Products. (*See, e.g.*, Exs. 11-19.) By these actions, Defendant has had the specific intent to induce, or was willfully blind to inducing, infringement of the ’245 patent.

65. On information and belief, Defendant also contributes to infringement of the ’245 patent by others, by providing the Infringing Products, which are specially made or adapted for use to infringe one or more claims of the ’245 patent and are not staple articles of commerce suitable for substantial noninfringing use. For example, as detailed in the exemplary infringement charts provided with this Complaint, (Exs. 9, 10) claim 21 of the ’245 patent is infringed by the combination of Defendant’s mosaic products with Defendant’s CytoFLEX flow cytometer products. As alleged in this Complaint, when combined, the CytoFLEX+mosaic systems employ up to six lasers and up to 81 fluorescence detectors to provide spectral flow cytometry capabilities to users. Defendant’s mosaic products are especially made for or adapted for use to infringe the ’245 patent, and are not a staple article of commerce, and are not suitable for substantial non-infringing use. As alleged in this Complaint, Defendant has had actual knowledge of the ’245 patent, and has had actual knowledge that the Infringing Products are especially made and/or especially adapted for use in infringing the ’245 patent.

66. Defendant’s infringement has been willful and deliberate because, on information and belief, Defendant has known of, should have known of, and/or has been willfully blind to the ’245 patent and knew of, should have known of, and/or was willfully blind to its infringement but

acted despite an objectively high likelihood that such acts would infringe the ’245 patent. Defendant’s willfulness is further shown by its copying and reverse-engineering of Cytek’s Aurora product as alleged in this Complaint.

67. As the direct and proximate result of Defendant’s conduct, Cytek has suffered, and if Defendant’s conduct is not enjoined, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial. Cytek and Defendant are direct competitors in the flow cytometry market, and Defendant’s sale of infringing spectral flow cytometry products causes ongoing harm to Cytek’s market position, customer relationships, and pricing power that cannot be adequately remedied by monetary damages alone. Because Cytek’s remedy at law is inadequate, Cytek seeks, in addition to damages, injunctive relief. Cytek pioneered the spectral flow cytometry market through substantial investment in research and development, and Defendant’s unauthorized use of Cytek’s patented technology to compete in that same market causes continuing irreparable harm absent injunctive relief.

## DEMAND FOR JURY TRIAL

68. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Cytek respectfully demands a trial by jury on all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Cytek prays that this Court enter judgment that:

A. Defendant has infringed the Asserted Patents;

B. Plaintiff is entitled to preliminary and permanent injunctive relief enjoining Defendant, its officers, agents, servants, and employees, and those persons in active concert or participation with any of them, from manufacturing, using, offering for sale, selling in the United States, or importing into the United States, the Infringing Products, and any other product that infringes or induces or contributes to the infringement of the Asserted Patents, prior to the

expiration date of the last to expire of those patents;

C. Plaintiff is entitled to an award of damages adequate to compensate for Defendant's infringement pursuant to 35 U.S.C. § 284, including lost profits or, at a minimum, a reasonable royalty, as well as pre-judgment and post-judgment interest;

D. Defendant's infringement of the Asserted Patents has been and continues to be willful;

E. Plaintiff is entitled to enhanced damages up to and including trebling of the damages awarded to it;

F. Plaintiff is entitled to costs and reasonable expenses to the fullest extent permitted by law;

G. This case is exceptional pursuant to 35 U.S.C. § 285, and Plaintiff is entitled to an award of attorneys' fees; and

H. Plaintiff is entitled to other and further relief as the Court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

Karen Jacobs (#2881)
Jeremy A. Tigan (#5239)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@morrisnichols.com
jtigan@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Plaintiff*
*Cytek Biosciences, Inc.*

October 16, 2026