IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CYTEK BIOSCIENCES, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 26-1342 (CFC) |
| BECKMAN COULTER, INC., | ) | **DEMAND FOR JURY TRIAL** |
| Defendant. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff Cytek Biosciences, Inc. ("Cytek" or "Plaintiff") brings this action for patent infringement, breach of contract, and unjust enrichment against Defendant Beckman Coulter, Inc. ("Beckman Coulter" or "Defendant").

## NATURE OF THE ACTION

1. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*, including 35 U.S.C. § 271; breach of contract; and unjust enrichment under California law.

2. Cytek brings this action to seek relief for Beckman Coulter's infringement of Cytek's rights under United States Patent Nos. 12,754,128 ("the '128 patent"); 12,487,167 ("the '167 patent"); 11,913,868 ("the '868 patent"); and 10,739,245 ("the '245 patent") (collectively, "the Asserted Patents"). (Exs. 1-4.)

3. Cytek also brought suit against Beckman Coulter in the United States International Trade Commission on October 8, 2026, asserting some of the same patents at issue here (the ’128 patent, the ’167 patent, and the ’245 patent).

4. Cytek also brings this action to seek relief for Beckman Coulter’s breach of two contracts it entered into with Cytek: the terms of sale for Beckman Coulter’s purchase of a Cytek Aurora instrument and the license governing its use of Cytek’s SpectroFlo software. Those contracts prohibited Beckman Coulter from, among other things, reverse engineering the Aurora and its software, restrictions Beckman Coulter knowingly breached. On information and belief, Beckman Coulter’s conduct in breach of its agreements with Cytek was in furtherance of its project to develop its own spectral flow cytometry product to compete with Cytek’s Aurora, which Beckman Coulter later launched as its infringing mosaic products. In the alternative, Cytek seeks restitution for Beckman Coulter’s unjust enrichment.

## **THE PARTIES**

5. Cytek is a corporation organized and existing under the laws of Delaware, with a principal place of business at 47215 Lakeview Boulevard, Fremont, California 94538. Cytek is the owner of all right, title, and interest in and to the Asserted Patents.

6. On information and belief, Beckman Coulter is a corporation organized and existing under the laws of Delaware, with a principal place of business at 250 South Kraemer Boulevard, Brea, California 92821.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction over Cytek's patent claims under 28 U.S.C. §§ 1331 and 1338(a) and the patent laws of the United States. (35 U.S.C. §§ 1, *et seq.*) The Court has supplemental subject matter jurisdiction over Cytek's state law claims for breach of contract and unjust enrichment under 28 U.S.C. § 1367 because those claims are so related to the federal claims in the action that they form part of the same case or controversy.

8. This Court has personal jurisdiction over Defendant at least because Defendant is and has at all relevant times been incorporated in Delaware. Further, Defendant has committed, aided, abetted, induced, contributed to, and/or participated in the commission of patent infringement that has led to foreseeable harm and injury to Cytek in Delaware. Further, Defendant has had at all relevant times substantial contacts with the forum as a consequence of its incorporation in Delaware and, upon information and belief, conducting business in Delaware.

9. Venue is proper in this District under 28 U.S.C. § 1400(b) because Defendant is and has at all relevant times been a Delaware corporation that, upon information and belief, conducts and has conducted business in Delaware. A patent

infringement action between the same parties, *Beckman Coulter, Inc. v. Cytek Biosciences, Inc.*, C.A. No. 24-945 (CFC) (D. Del.), is currently pending before this Court.

## FACTUAL ALLEGATIONS

10. Cytek was founded in 1992 in Fremont, California. Cytek is now a world leading cell analysis solutions company that is continually innovating to advance the next generation of cell analysis tools by delivering technology capable of providing high-resolution, high-content and high-sensitivity cell analysis using its patented full spectrum (also referred to as spectrum or spectral)[1] flow cytometry technology. Cytek's innovation is in a novel technological approach to cell analysis. Specifically, Cytek's patented Full Spectrum Profiling technology provides a full spectrum of fluorescence signatures from multiple lasers to distinguish fluorescent tags on single cells. Cytek's Full Spectrum Profiling technology optimizes sensitivity and accuracy through its unique optical and electronic designs that utilize an innovative method of light detection and distribution to a specifically selected number and type of detectors.

[1] As used herein, the terms "full spectrum flow cytometry," "spectrum flow cytometry," and "spectral flow cytometry" are used interchangeably. These terms describe flow cytometry systems, which capture and detect the full emission spectrum of fluorescent molecules using arrays of highly sensitive light detectors, as contrasted with conventional flow cytometry, which measures light at specific wavelength ranges in a one-detector-per-fluorochrome approach.

11. Cytek's core mission is to enable the world to improve life through scientific innovation. To that end, Cytek is committed to providing powerful solutions that allow scientists to rapidly and efficiently obtain deep biological insights through high-quality, high-parametric datasets.

12. Cytek's spectral products provide powerful tools for scientific innovation and advancement. Cytek pioneered the widespread adoption of spectral flow cytometry in the field by launching its Aurora Flow Cytometry System as the first commercially available full spectrum flow cytometer using "avalanche" photodiode technology. Cytek's spectral flow cytometry systems have been highly successful, adopted by scientists across the United States and around the world to enhance the complexity and power of their experiments. As of 2025, Cytek's spectral flow cytometers have been referenced in more than 3,200 peer-reviewed publications. Cytek's technology is backed by a comprehensive suite of patent protection, which includes the Asserted Patents.

13. The Asserted Patents claim certain novel technologies within the field of flow cytometry systems. Flow cytometers are complex, precision scientific instruments that analyze cells or other biological samples. Cells are first stained with fluorescent dyes and then directed through a "flow cell" by the use of advanced fluidics, where the cells are, one-by-one, illuminated with a light source such as a laser, at rates up to tens of thousands of cells per second. The fluorescent dyes

present in the cells respond to laser light illumination by emitting fluorescent light which is detected by exquisitely sensitive optical components. In this way, individual cells can be optically analyzed to determine whether they emit fluorescent signals, among other characteristics such as size and shape. This same technology also provides scientists with the ability to sort individual cells from a larger population, based on these same characteristics, with a sorting flow cytometer (also referred to as a "cell sorter").

14. For many decades, "conventional" flow cytometry employed light detection systems that were inherently limited. Fluorescent light emitted by illuminated cells was captured by detection modules containing one or a few light detectors, each of which was associated with a specific "bandpass" filter which only allowed light of a narrow wavelength range to reach its associated detector. As a result, experiments were limited in the number of different fluorochromes that could be used, because each fluorochrome was assigned to a specific detector configured to look only for light in the wavelength in the expected "peak" of emission of a given fluorochrome. Further, scientists could not employ two different fluorescent dyes in the same experiment if they emitted fluorescent light at similar wavelengths, because the instruments could not effectively distinguish between those similar-wavelength dyes, as shown in the figure below. As a result, by limiting the number

and type of fluorochromes that can be used, conventional flow cytometry places an inherent limit on the complexity of experiments scientists can conveniently perform.




Figure 1: Spectrum plots from a conventional spectrum viewer shows heavy overlap between APC and Alexa Fluor 647.

15. Spectral flow cytometry systems, as claimed in the Asserted Patents, capture and detect the full emission spectrum of fluorescent molecules using highly sensitive light detector arrays, as contrasted with conventional flow cytometry, which uses discrete bandpass filters to measure a specific wavelength range in a one-detector-per-fluorochrome approach. This revolutionary spectral approach to flow cytometry, pioneered by Cytek, radically enhances the power of flow cytometry by enabling scientists to detect a much higher number of different fluorochromes in a single sample run than would be possible with conventional flow cytometry. Experiments containing many dozens of different fluorochromes can be analyzed in a single pass through the spectral flow cytometer because the full emission spectrum for each dye is captured by the detector arrays, as shown in the example figure below. Unmixing algorithms are then applied computationally to robustly determine the

spectral signature for each fluorochrome, even when multiple fluorochromes with similar peak emission spectra are analyzed in a single experiment.




**Figure 2**: Spectrum plots from a four-laser Cytek Aurora™ system show distinct signatures for APC and Alexa Fluor 647.

16. Spectral flow cytometry, as claimed in the Asserted Patents, is highly useful to scientists because it enables them to perform much more complex experiments that provide new insights into biological systems and human diseases. For example, Cytek's spectral flow cytometry systems, which are embodiments of the claimed inventions, have enabled researchers to analyze 40 distinct immune system functions in a single experiment — a feat which would have been impossible using conventional flow cytometry.

17. Cytek's spectral flow cytometry systems include its Aurora product, which was the first commercially available full spectrum flow cytometer using "avalanche" photodiode technology. The Aurora system employs up to five distinct lasers and detection arrays with up to 64 individual detectors, enabling scientists to

employ very large panels of up to 40 or more fluorochromes in a single experiment. Cytek's Aurora product is also available in a "CS" or Cell Sorter configuration, which allows scientists to sort individual cells meeting certain criteria from larger populations as part of their experiment. Cytek's newest Aurora product is the Aurora Evo system, which enhances the spectral capabilities of Aurora with improvements in sample throughput, small particle detection, automated instrument maintenance, and data harmonization. Cytek also offers a spectral flow cytometry system with three lasers and up to 38 detectors called Northern Lights, which provides many of the same advantages as Aurora over conventional flow cytometry, but in a smaller and more economical format.

18. Beckman Coulter's conventional flow cytometry systems have a large installed user base in the United States and throughout the world. However, until recently, Beckman Coulter had been unable to meet scientists' demand for a spectral flow cytometry system. In an effort to solve this problem, Beckman Coulter copied Cytek's revolutionary patented technologies for spectral flow cytometry and incorporated them into its infringing products, first launched in March 2025 as Beckman Coulter's "mosaic" products (the "Infringing Products"). The Infringing Products represent Beckman Coulter's belated efforts to enter the field of spectral flow cytometry using the inventions of the Asserted Patents. Its mosaic 88 and mosaic 63 products are optical detection systems which are connected via fiber optic

connections to Beckman Coulter's conventional CytoFLEX flow cytometers. When combined, the CytoFLEX+mosaic systems employ up to six lasers and up to 81 fluorescence detectors to provide spectral flow cytometry capabilities to users.

19. Defendant paved its entry into the field of spectral flow cytometry by copying Cytek's patented technologies in its Aurora product. In December 2019, Defendant held an initial meeting for its internal "Rainbow" project to develop its own spectral flow cytometer, where Defendant considered (and ultimately pursued) Cytek's approach to spectral flow cytometry. (Ex. 38, Trial Tr. at 795:8-796:21.) Defendant then obtained a quotation for an Aurora in September 2020 and purchased it in October 2020. Defendant received the Aurora at its Miami facility in October 2020 and used it to assist in the development of a copycat product.

CYTEK
TRANSCEND THE CONVENTIONAL

Quotation Ref: AUR-00002352-9-9-2020-ver00

Quote Date: September 09, 2020
Quote Valid Until: November 08, 2020

| | | | |
|---|---|---|---|
| Bill To Name | Beckman Coulter | Ship To Name | Beckman Coulter |
| Billing Address | 11800 SW 147th Ave Bldg 1, Floor 2, Rm K05<br>Miami<br>Florida, 33196<br>United States | Shipping Address | 11800 SW 147th Ave Bldg 1, Floor 2, Rm K05<br>Miami<br>Florida, 33196<br>United States |
| Prepared By (Name) | Katherine Fonte | Contact Name | James Tung |
| Prepared By (Phone) | +1 6783877135 | Phone | 305-380-2733 |
| Prepared By (Email) | kfonte@cytekbio.com | Email | jwtung@beckman.com |
| Prepared By (Fax) | | Fax | |

| Item | Description | Product Number | Qty | List Price USD | Net Price USD | Ext.Price USD |
|---|---|---|---|---|---|---|
| 1 | Cytek™ Aurora | | | | | |
| | Cytek Aurora 5 Laser UV/V/B/YG/R (64 + 3 Channel)<br>Includes: • 5-laser flow cytometer • Workstation (computer, monitor, keyboard, mouse) • 1 additional copy of SpectroFloTM • Fluidic reservoirs • QC and consumable parts kit • 1-year on-site warranty | N7-00003 | 1.00 | 399,000.00 | 399,000.00 | 399,000.00 |
| | Cytek Auto Micro-Sampling System (AMS) | N7-00020 | 1.00 | 25,000.00 | 25,000.00 | 25,000.00 |
| | 2 day on-site training<br>Two-day training: lectures on the fundamentals of spectral cytometry and panel design w/ hands-on operator training (max. 4 students for operator training) | N9-90000-0A | 1.00 | 5,225.00 | 0.00 | 0.00 |

| | |
|---|---|
| **Sub-Total** | **424,000.00** |
| Shipping and Handling | 2,400.00 |
| **Grand Total** | **426,400.00** |

(Ex. 40, DTX-2447.0002; Ex. 42, DTX-2446; *see also* Ex. 39, Trial Tr. at 595:2-596:4 (Cytek's CEO confirming Defendant received Aurora in October 2020); Ex. 38, Trial Tr. at 787:12-23.) Defendant's Aurora purchase also included the purchase of Cytek's proprietary SpectroFlo software. (Ex. 40, DTX-2447.0002.)

20. In connection with this purchase, Defendant entered into a contract with Cytek. In a quote dated September 9, 2020, Cytek provided Defendant with a quotation for the purchase of a Cytek Aurora device. (Ex. 40, DTX-2447.0001-

0002.) This quotation included "General Terms and Conditions of Sale." (Ex. 40, DTX-2447.0003-0006 (hereinafter the "Aurora Contract").) These terms and conditions specified that "[y]our issuance of a purchase order for any of the products or services referencing the quotation number or at the prices indicated in the quotation will be your indication to Cytek that you agree to all the terms and conditions on this quotation without exception and it will become the entire agreement between you and Cytek for the products and services ordered." (Ex. 40, DTX-2447.0003 (§ 2).) The Aurora Contract further specified that "[t]he Quotation (including these General Terms and Conditions of Sale) constitutes the entire understanding between you and Cytek with respect to its subject matter and supersedes all prior or co-existing communications and agreements regarding its subject matter and cannot be modified except by a written document (which states that it is an amendment) signed by authorized signatories of both parties." (Ex. 40, DTX-2447.0005 (§ 15).)

21. The Aurora Contract also included a "Restricted Use" provision that prohibited Defendant from using the Aurora for any commercial purposes, and specifically prohibited reverse engineering and use of the Aurora to create or develop a product similar to the Aurora.

> **22. RESTRICTED USE.** This product is limited to your use for internal, noncommercial purposes– you may not use the product in connection with any commercial activities, which include (without limitation) use of the product in connection with any services that you to your clients or customers that you are compensated for regardless of the manner in which you are compensated by those clients or customers. You may not use the product to provide services to any third parties, or otherwise use the product for commercial purposes. **In addition, you may not, and may not authorize or permit any affiliate or third party to, gain access to or determine the methods of operation of the product, alter, modify, disassemble, dismantle, deconstruct, analyze, determine compositions or structures, design around, or reverse engineer the product, or any part of the product, nor attempt to, or use the product to, refurbish, reconstruct, create, develop or contract to develop a product similar to the product.**

(Ex. 40, DTX-2447.0006 (§ 22).)

22. In the section entitled "Denovo Software Use," the Aurora Contract further specified that "[t]his product is limited to your use for internal, noncommercial purposes— you may not use the product in connection with any commercial activities." (Ex. 40, DTX-2447.0005 (§ 20).)

23. On October 14, 2020, in response to Cytek's quotation, Defendant issued a purchase order for the Cytek Aurora and associated products, software, and services that referenced Cytek's September 9, 2020 quotation (number AUR-00002352-9-9-2020-ver00) and the prices indicated in it. (Ex. 42, DTX-2446.) Under Section 2 of the quotation, Defendant's issuance of that purchase order constituted its agreement to all of the Aurora Contract's terms and conditions of sale without exception. (Ex. 40, DTX-2447.0003 (§ 2).)

24. Cytek thereafter delivered the Aurora and associated SpectroFlo software to Defendant's Miami facility. Defendant accepted delivery, paid the quoted purchase price, and used the Aurora and SpectroFlo software.

25. Defendant's internal documentation from December 2020 shows that Defendant took purposeful steps not only to benchmark its development of a copycat product against the Aurora, but also to reverse-engineer the Aurora's unmixing

algorithm and the detector channel bin widths, features of Cytek's patented full spectrum flow cytometry technologies that are not observable without violation of the Restricted Use provision of the Aurora Contract.

## Risk registry

| # | Risk Description (Risk: what may or could happen) | Risk Impact | Impact Severity | Probability | Overall Rating | Owner | Mitigations (Actions to reduce event probability or impact) | Mitigation Due Date | Trigger Date | Contingency | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Do narrow band filters allow us to maintain superior sensitivity of CytoFLEX? | high impact. | high | medium | 50 | Jane Kim/Milan Popovic | reduce noise | 12.30.2020 | | | Open |
| 2 | What is the right bin width to get similar resolution as Aurora Cytek? | high impact. | high | medium | 50 | Jane Kim/Milan Popovic/Jimmy Tung | similar bins as Aurora | 03.30.2021 | | | Open |
| 3 | Optimization of Spectral Gain settings based on Spread Matrix requirements may affect MESF and SI values | high impact. | high | medium | 50 | Jane Kim/Milan Popovic/Jimmy Tung | Perform panel design tests and identify Gain calibration settings based on 3M, revisit MESF and SI | 03.30.2021 | | | Open |
| 4 | What is the optimal design of WDM to minimize optical losses with larger number of spectral bins. | high impact. | high | medium | 50 | Jane Kim | optical simulation design, rapid prototyping | 03.30.2021 | | ME support for rapid prototyping | Issue |
| 5 | Reverse engineering of the 8-12 Cytek colors algorithm is very complex | Then a delay in project schedule will be impacted by 3 weeks | High | Medium | 50 | Robert | Investigate using 2 colors first and then advancing to more colors. | 12/30/2020 | 1/22/2021 | Stop comparing algorithm to Cytek and create our own algorithm | Open |
| 6 | Unmixing algorithm 30 bins: how to calculate SI, how to calculate MESF for spectral flow. | high impact. | medium | medium | 25 | John Riley | learn others product: FCS express, Aurora | 03.30.2021 | | | Open |

## Next steps

1. Raw data comparison between **single-brightest peaks** Rainbow vs. Aurora CD4 antibodies, 2 pear each laser
2. Side by side comparison of SI in CytoFLEX LX vs. Aurora vs. Rainbow based on **Virtual filters**
3. Raw data comparison between **signal-peak smallest MESF** peaks Rainbow vs. Aurora vs. CytoFLEX
4. Run color panel in 30bins Rainbow and 30 bins Aurora.
5. Learning loop of Aurora work flow. In process of reverse engineering of Cytek Unmixing algorithm.
6. Develop in house Unmixing algorithm.

(Ex. 41, DTX-0105.0004, -0017 (red annotations added); *see also* Ex. 38, Trial Tr. at 788-789.)

26. The Restricted Use provision of the Aurora Contract expressly prohibited several activities: "you may not, and may not authorize or permit any affiliate or third party to, gain access to or determine the methods of operation of the product, alter, modify, disassemble, dismantle, deconstruct, analyze, determine compositions or structures, design around, or reverse engineer the product, or any part of the product, nor attempt to, or use the product to, refurbish, reconstruct, create, develop or contract to develop a product similar to the product." (Ex. 40, DTX-2447.0006 (§ 22).) On information and belief, Defendant breached the Aurora Contract by engaging in these expressly prohibited activities. For example, in April 2021, Defendant's employee Evgenia M. (Jane) Kim emailed several Defendant personnel, including Leo (Xianghua) Shi, stating that she "looked under the Aurora's laser box" and examined the Aurora's "optical components," including its "lenses, dichroic mirrors," "[o]pto-mech[a]nical parts," and its "[f]ocusing lens." (Ex. 43, DTX-0243.)

27. Defendant was fully aware of the Restricted Use provision in the Aurora Contract. For example, in June-July 2021, Defendant's personnel Woody (Di) Wu, Sunny (Qinyang) Hu, Summer (Wenting) Xia, Leo (Xianghua) Shi, Grace (Shuxian) Zhou, and Mark (Zhenhua) Chen exchanged email correspondence specifically referencing and copy/pasting the Restricted Use provision of the Aurora Contract. (Ex. 44, DTX-0242.) Despite this knowledge, on information and belief,

Defendant continued to use the Aurora, and information derived from it, in developing the Infringing Products, without notifying Cytek or seeking its consent.

28. In connection with its use of Cytek's proprietary SpectroFlo software beginning in or around October 2020, Defendant also entered into a contract with Cytek by accepting the terms of the license agreement entitled "Cytek Biosciences Software License Agreement" (hereinafter the "SpectroFlo Contract") associated with installation of that software. (Ex. 45.) The installation process for the SpectroFlo software at all relevant times required all users to confirm their acceptance of the terms of the license agreement in order to successfully install the software. Users wishing to accept the terms and proceed with installation were required to select a button associated with the text "I accept the terms of the license agreement" and click "Next." Users were also given the option to refuse to accept the license terms by selecting the button associated with the text "I do not accept the terms of the license agreement," in which case the software would not be installed or usable.

29. Under the terms of the SpectroFlo Contract, an employee or agent of customer agrees "THAT YOU ARE ENTERING INTO THIS AGREEMENT TO OBTAIN THE SOFTWARE FOR USE BY CUSTOMER FOR ITS OWN BUSINESS PURPOSES, YOU HEREBY AGREE THAT YOU ENTER INTO THIS AGREEMENT ON BEHALF OF CUSTOMER AND THAT YOU HAVE

THE AUTHORITY TO BIND CUSTOMER TO THE TERMS AND CONDITIONS OF THIS AGREEMENT." (Ex. 45 at 1.) The SpectroFlo Contract further recites in bold and boxed text that "BY CLICKING ON THE "ACCEPT" BUTTON BELOW, YOU ACKNOWLEDGE THAT YOU HAVE READ THIS AGREEMENT, UNDERSTAND IT, AND AGREE TO BE BOUND BY IT. IF YOU DO NOT AGREE TO ANY OF THE TERMS BELOW, CYTEK BIO IS UNWILLING TO LICENSE THE SPECTROFLO SOFTWARE TO CUSTOMER, AND YOU MUST CLICK ON THE "DO NOT ACCEPT" BUTTON BELOW TO DISCONTINUE THE INSTALLATION PROCESS." (*Id.*)

30. In the "License Restrictions" section of the SpectroFlo Contract, the customer agrees, among other things, not to "(e) reverse engineer, decompile, disassemble, or otherwise attempt to derive the Source Code for the SpectroFlo Software; or (f) otherwise use or copy the SpectroFlo Software except as expressly allowed under Section 2." (*Id.* at 2.)

31. By accepting the terms and using the SpectroFlo software, Defendant was bound by the terms of the SpectroFlo Contract.

32. On information and belief, Defendant breached the SpectroFlo Contract by engaging in expressly prohibited activities, including by reverse engineering Cytek's unmixing algorithm, which is implemented in the SpectroFlo software, as detailed above.

33. On information and belief, Defendant used and incorporated the information gleaned from reverse-engineering the patented technology in Cytek's Aurora in its subsequent development of the Infringing Products.

**The Asserted Patents**

34. The '128 patent (Exhibit 1 hereto), entitled "Methods for Compact Multi-Color Flow Cytometers Having Compact Detection Modules," was filed on July 14, 2021 and issued on October 6, 2026 to inventors Ming Yan, Yung-Chieh Hsieh, David Vrane, Eric Chase, and Wenbin Jiang.

35. The '167 patent (Exhibit 2 hereto), entitled "Methods and Apparatus for Full Spectrum Flow Cytometer," was filed on June 26, 2021 and issued on December 2, 2025 to inventors Maria Jaimes, Zhenyu Zhang, Jian Zhou, Huimin Gu, Qing Shao, Ming Yan, and David Vrane.

36. The '868 patent (Exhibit 3 hereto), entitled "Compact Detection Module for Flow Cytometers," was filed on May 10, 2021 and issued on February 27, 2024 to inventors Ming Yan, Yung-Chieh Hsieh, David Vrane, and Eric Chase.

37. The '245 patent (Exhibit 4 hereto), entitled "Compact Multi-Color Flow Cytometer," was filed on April 26, 2017 and issued on August 11, 2020 to inventors David Vrane, Ming Yan, Eric Chase, and Wenbin Jiang.

38. Cytek owns all rights, title, and interest in and to the Asserted Patents.

**Defendant's Infringing Products**

39. Beckman Coulter makes, uses, sells, supplies, offers for sale, and/or imports Infringing Products, including at least the Beckman Coulter mosaic 88 and mosaic 63 flow cytometry detector module systems.

40. The Infringing Products further include any products, components, or convoyed or derivative products that were imported, made, used, sold, and/or offered for sale by or on behalf of Beckman Coulter in connection with and/or as part of Beckman Coulter mosaic 88 and mosaic 63 flow cytometry detector module systems and any other of its products that embody like functionality, including without limitation the Beckman Coulter CytoFLEX S and CytoFLEX LX flow cytometry systems (and associated components and reagents) which, when combined with the Beckman Coulter mosaic 88 and mosaic 63 flow cytometry detector module systems, infringe the Asserted Patents.

41. By selling, manufacturing, using, offering for sale in the United States and/or importing into the United States the Infringing Products, Beckman Coulter has infringed and continues to infringe the Asserted Patents, both directly and indirectly, and has benefited from doing so.

42. Exemplary infringement charts, attached as Exhibits 5-6, detail Defendant's infringement of at least claims 1, 11, 15-21, and 23-29 of the '128 patent. An exemplary infringement chart, attached as Exhibit 7, details Defendant's

infringement of at least claims 1-4, 6, and 8-20 of the '167 patent. An exemplary infringement chart, attached as Exhibit 8, details Defendant's infringement of at least claim 3 of the '868 patent. Exemplary infringement charts, attached as Exhibits 9-10, detail Defendant's infringement of at least claim 21 of the '245 patent. Exhibits 20-34, cited in these exemplary infringement charts, include exemplary evidence of Defendant's infringement of the Asserted Patents. These descriptions are not intended to limit Cytek's right to amend, supplement, or modify these descriptions or any other analysis, description, or claim chart or allege that other activities of Defendant infringe the identified claims or any other claims of the Asserted Patents or other patents.

43. On information and belief, Beckman Coulter knew of, should have known of, and/or has been willfully blind to the Asserted Patents, and its infringement thereof. Defendant's willfulness is further shown by its copying and reverse-engineering of Cytek's Aurora product as alleged in this Complaint.

44. Beckman Coulter has had actual knowledge of the '128 patent, and the application leading to it, prior to the filing of this Complaint. For example, Cytek notified Beckman Coulter of the '128 patent and its infringing activities by letter dated October 6, 2026. (Ex. 36.) Further, on information and belief, Beckman Coulter regards Cytek as a competitor in the flow cytometer space, has sued Cytek for patent infringement, and has long actively monitored Cytek's patent activities.

Through this monitoring, Beckman Coulter has long known of the patent family of which the ’128 patent is a part, and has been actively monitoring Cytek’s prosecution of patent applications in this family. For example, Beckman Coulter has long known of Cytek’s asserted ’245 patent, which was filed as U.S. Patent Application 15/498,397. The ’128 patent is a member of the same patent family as the asserted ’245 patent; both patents claim priority to U.S. Provisional Application 62/327,946. Defendant’s knowledge of the ’245 patent is shown, for example, by Defendant’s citation of the ’245 patent in the ongoing civil action that Beckman Coulter filed against Cytek. (*See Beckman Coulter, Inc. v. Cytek Biosciences, Inc.*, C.A. No. 24-945 (CFC) (D. Del. Jan. 9, 2025) (D.I. 42 (“Beckman Coulter First Amended Complaint”) ¶ 19).) As a further example, Defendant has had actual knowledge since no later than December 19, 2025 of U.S. Patent Application Serial No. 17/375,988, which led to the ’128 patent, as shown through citation by Beckman Coulter’s expert of Cytek’s online patent marking page, which lists several Cytek patents and applications including 17/375,988. (*See* Ex. 37, *Beckman Coulter, Inc. v. Cytek Biosciences, Inc.*, C.A. No. 24-945 (CFC) (D. Del.) (D.I. 420-4, Cytek Opp. to Beckman Coulter’s MIL No. 1, Ex. 3 at 62 (¶ 127); *see also id.* at 78, 98-99, 116, 138, 156, 160, 191-194, 196-199, 216-217).)

45. Beckman Coulter has had actual knowledge of the ’167 patent, and the application leading to it, prior to the filing of this Complaint. For example, Cytek

notified Beckman Coulter of the ’167 patent and its infringing activities by letter dated October 6, 2026. (Ex. 36.) Further, on information and belief, Beckman Coulter regards Cytek as a competitor in the flow cytometer space, has sued Cytek for patent infringement, and has long actively monitored Cytek’s patent activities. Through this monitoring, Beckman Coulter has long known of the patent family of which the ’167 patent is a part, and has been actively monitoring Cytek’s prosecution of patent applications in this family. For example, Beckman Coulter has long known of the publication of the application that led to Cytek’s asserted ’167 patent, U.S. Published Patent Application 2022/0082489A1, which was cited in the International Bureau of the World Intellectual Property Organization’s January 31, 2025 International Search Report in Beckman Coulter’s patent application PCT/US2024/050571. (Ex. 35 at 4 (identifying U.S. 2022/0082489A1 as a family member of U.S. 2022/0082488A1).) As a further example, Beckman Coulter has had actual knowledge since no later than December 19, 2025 of U.S. Patent Application Serial No. 17/304,844, which led to the ’167 patent, as shown through citation by Beckman Coulter’s expert of Cytek’s online patent marking page, which lists several Cytek patents and applications including 17/304,844. (*See* Ex. 37, *Beckman Coulter, Inc. v. Cytek Biosciences, Inc.*, C.A. No. 24-945 (CFC) (D. Del.) (D.I. 420-4, Cytek Opp., Ex. 3 at 62 (¶ 127); *see also id.* at 78, 98-99, 116, 138, 156, 160, 191-194, 196-199, 216-217).)

46. Beckman Coulter has had actual knowledge of the ’868 patent, and the application leading to it, prior to the filing of this Complaint. For example, Cytek notified Beckman Coulter of the ’868 patent and its infringing activities by letter dated October 6, 2026. (Ex. 36.) Further, on information and belief, Beckman Coulter regards Cytek as a competitor in the flow cytometer space, has sued Cytek for patent infringement, and has long actively monitored Cytek’s patent activities. Through this monitoring Beckman Coulter has long known of the patent family of which the ’868 patent is a part, and has been actively monitoring Cytek’s prosecution of patent applications in this family. For example, Beckman Coulter’s U.S. patent application 18/847,394, which published as U.S. 2025/0198904, cites Cytek’s published patent application U.S. 2021/0262917, which corresponds to Cytek’s ’868 patent. As a further example, Beckman Coulter has had actual knowledge of the ’868 patent since no later than December 19, 2025, when Beckman Coulter’s expert cited it in its expert report. (*See* Ex. 37, *Beckman Coulter, Inc. v. Cytek Biosciences, Inc.*, C.A. No. 24-945 (CFC) (D. Del.) (D.I. 420-4, Cytek Opp., Ex. 3 at 62 (¶ 127); *see also id.* at 78, 98-99, 116, 138, 156, 160, 191-194, 196-199, 216-217).)

47. Cytek has, at least since October 31, 2025, marked its full spectrum flow cytometry products with at least the ’245 and ’868 patents via product labelling and its virtual patent marking webpage, in compliance with the requirements of 35 U.S.C. § 287(a).

48. Beckman Coulter has had actual knowledge of the ’245 patent, and the patent application leading to it, prior to the filing of this Complaint. For example, Cytek notified Beckman Coulter of the ’245 patent and its infringing activities by letter dated October 6, 2026. (Ex. 36.) Further, on information and belief, Beckman Coulter regards Cytek as a competitor in the flow cytometer space, has sued Cytek for patent infringement, and has long actively monitored Cytek’s patent activities. Through this monitoring, Beckman Coulter has long known of the patent family of which the ’245 patent is a part, and has been actively monitoring Cytek’s prosecution of patent applications in this family. For example, Beckman Coulter’s knowledge of the ’245 patent is shown by its citation to the ’245 patent in the ongoing civil action. (*See* Beckman Coulter First Amended Complaint ¶ 19.)

49. As the direct and proximate result of Beckman Coulter’s conduct, Cytek has suffered, and if Beckman Coulter’s conduct is not enjoined, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial. Cytek and Defendant are direct competitors in the flow cytometry market, and Defendant’s sale of infringing spectral flow cytometry products causes ongoing harm to Cytek’s market position, customer relationships, and pricing power that cannot be adequately remedied by monetary damages alone. Because Cytek’s remedy at law is inadequate, Cytek seeks, in addition to damages, injunctive relief. Cytek pioneered the spectral flow cytometry market through

substantial investment in research and development, and Defendant's unauthorized use of Cytek's patented technology to compete in that same market causes continuing irreparable harm absent injunctive relief.

**COUNT 1**

**(INFRINGEMENT OF THE '128 PATENT)**

50. Plaintiff incorporates each of the above paragraphs as though fully set forth herein.

51. On information and belief, Defendant, directly or through the actions of its employees, agents, distributors, divisions, and/or subsidiaries, has infringed and continues to infringe one or more of the claims of the '128 patent, including at least claim 1 of the '128 patent, directly, indirectly, literally and/or by equivalents under 35 U.S.C. §§ 1 *et seq.*, including, but not limited to, section 271 by, among other things, making, using (including during research and development activities and product testing), selling, supplying, offering for sale the Infringing Products in the United States and/or importing the Infringing Products into the United States, and/or inducing or contributing to such acts, without authority. To the extent Defendant asserts that any limitation is not literally met, any differences between the Infringing Products and the claims of the '128 patent are insubstantial and one or more elements of each of Defendant's Infringing Products matches the function, way, and result of that claim limitation.

52. For example, the Infringing Products meet each element of, and infringe, claim 1, which states:

> A flow cytometer system comprising:
>
> a laser system having a plurality of different lasers to emit a plurality of differing laser beams;
>
> a flow cell assembly positioned to receive the plurality of differing laser beams at an interrogation region of a flow channel where fluoresced cells in a fluidics stream scatter the plurality of differing laser beams and emit fluorescent light;
>
> at least one optical fiber of at least one fiber assembly positioned to collect the fluorescent light at a first end and direct the fluorescent light towards a second end; and
>
> at least one light detection module to receive the fluorescent light from the second end of the at least one optical fiber of the at least one fiber assembly, the at least one light detection module including
>
> a first optical array having
>
> a transparent block,
>
> a first plurality of reflection surfaces in a row coupled to a first side of the transparent block, and
>
> a first plurality of optical filters in a row coupled to a second side of the transparent block opposite the first side; and
>
> a first plurality of N detector channels in a row forming a first detector chain adjacent the first optical array, wherein N is eight (8) or more and each detector channel includes a focusing lens, and a photodiode.

53. Defendant infringes each element of at least claim 1 of the ’128 patent. As an example, infringement charts, detailing Defendant’s infringement of claim 1

of the ’128 patent, are attached as Exhibits 5-6. These charts are not intended to limit Cytek’s right to modify the charts or allege that other activities of Defendant infringe the identified claims or any other claims of the Asserted Patents. Exhibits 5-6 are hereby incorporated by reference in their entirety. Each claim element in Exhibits 5-6 that is mapped to the Infringing Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

54. Defendant also has actively, knowingly, and intentionally induced infringement of the ’128 patent under 35 U.S.C. § 271(b), and continues to actively, knowingly and intentionally induce such infringement by actively encouraging others to make, use, offer to sell, sell, and/or import the Infringing Products in the United States. On information and belief, as alleged in this Complaint, Defendant had actual knowledge of the ’128 patent before the filing of this Complaint. Defendant actively promotes the sale, use, and importation of Defendant’s infringing spectral flow cytometry devices in marketing materials, technical specifications, data sheets, web pages on its websites, press releases, and user manuals, as well as at trade shows and through its sales and distribution channels that encourage infringing sales, offers to sell, and importation of the Infringing Products. (*See, e.g.*, Exs. 11-19.) By these actions, Defendant has had the specific intent to induce, or was willfully blind to inducing, infringement of the ’128 patent.

55. On information and belief, Defendant also contributes to infringement of the ’128 patent by others, by providing the Infringing Products, which are especially made or adapted for use to infringe one or more claims of the ’128 patent and are not staple articles of commerce suitable for substantial non-infringing use. For example, as detailed in the exemplary infringement charts provided with this Complaint, (*see* Exs. 5, 6) claim 1 of the ’128 patent is infringed by the combination of Defendant’s mosaic products with Defendant’s CytoFLEX flow cytometer products. As alleged in this Complaint, when combined, the CytoFLEX+mosaic systems employ up to six lasers and up to 81 fluorescence detectors to provide spectral flow cytometry capabilities to users. Defendant’s mosaic products are especially made for or adapted for use to infringe the ’128 patent, and are not a staple article of commerce, and are not suitable for substantial non-infringing use. As alleged in this Complaint, Defendant has had actual knowledge of the ’128 patent, and has had actual knowledge that the Infringing Products are especially made and/or especially adapted for use in infringing the ’128 patent.

56. Defendant’s infringement has been willful and deliberate because, on information and belief, Defendant has known of, should have known of, and/or has been willfully blind to the ’128 patent and knew of, should have known of, and/or was willfully blind to its infringement but acted despite an objectively high likelihood that such acts would infringe the ’128 patent. Defendant’s willfulness is

further shown by its copying and reverse-engineering of Cytek's Aurora product as alleged in this Complaint.

57. As the direct and proximate result of Defendant's conduct, Cytek has suffered, and if Defendant's conduct is not enjoined, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial. Cytek and Defendant are direct competitors in the flow cytometry market, and Defendant's sale of infringing spectral flow cytometry products causes ongoing harm to Cytek's market position, customer relationships, and pricing power that cannot be adequately remedied by monetary damages alone. Because Cytek's remedy at law is inadequate, Cytek seeks, in addition to damages, injunctive relief. Cytek pioneered the spectral flow cytometry market through substantial investment in research and development, and Defendant's unauthorized use of Cytek's patented technology to compete in that same market causes continuing irreparable harm absent injunctive relief.

**<u>COUNT 2</u>**

**(INFRINGEMENT OF THE '167 PATENT)**

58. Plaintiff incorporates each of the above paragraphs as though fully set forth herein.

59. On information and belief, Defendant, directly or through the actions of its employees, agents, distributors, divisions, and/or subsidiaries, has infringed

and continues to infringe one or more of the claims of the ’167 patent, including at least claim 1 of the ’167 patent, directly, indirectly, literally and/or by equivalents under 35 U.S.C. §§ 1 *et seq.*, including, but not limited to, section 271 by, among other things, making, using (including during research and development activities and product testing), selling, supplying, offering for sale the Infringing Products in the United States and/or importing the Infringing Products into the United States, and/or inducing or contributing to such acts, without authority. To the extent Defendant asserts that any limitation is not literally met, any differences between the Infringing Products and the claims of the ’167 patent are insubstantial and one or more elements of each of Defendant’s Infringing Products matches the function, way, and result of that claim limitation.

60. For example, the Infringing Products meet each element of, and infringe, claim 1, which states:

> A system for analyzing biological fluids, the system comprising:
>
> a full spectrum flow cytometer having five (5) or more differing lasers each emitting a different wavelength of laser light and four (4) or more associated detector modules providing N individual photo detectors to capture a full spectrum of visible light, wherein N is forty-eight (48) or more and each individual photo detector is a photodiode;
>
> a single labeled biological sample to run through the full spectrum flow cytometer, the single labeled biological sample having over thirty (30) different markers respectively labeled with over thirty (30) and less than N different fluorochrome-conjugated antibodies to generate

over thirty (30) and less than N different colors when excited by the five (5) or more lasers of the flow cytometer that can be detected by the four (4) or more associated detector modules with the N individual photo detectors; and

a computer system coupled in communication with the flow cytometer, the computer system having a display device, a storage device, and a processor to execute instructions, wherein the storage device stores data samples from the flow cytometer in response to running the single labeled biological sample through the flow cytometer, and the processor executes instructions to process the stored data samples to generate full spectrum signatures of the fluorescence given off by each marked biological cells in the single labeled biological sample with a single run through the flow cytometer, wherein each full spectrum signature is used to determine the type and quantity of the plurality of biological cells in the single labeled biological sample with a single run through the flow cytometer, wherein the display device displays the full spectrum signatures to a user.

61. Defendant infringes each element of at least claim 1 of the ’167 patent. As an example, an infringement chart, detailing Defendant’s infringement of claim 1 of the ’167 patent, is attached as Exhibit 7. This chart is not intended to limit Cytek’s right to modify the chart or allege that other activities of Defendant infringe the identified claims or any other claims of the Asserted Patents. Exhibit 7 is hereby incorporated by reference in its entirety. Each claim element in Exhibit 7 that is mapped to the Infringing Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

62. Defendant also has actively, knowingly, and intentionally induced infringement of the ’167 patent under 35 U.S.C. § 271(b) and continues to actively, knowingly and intentionally induce such infringement by actively encouraging others to make, use, offer to sell, sell, and/or import the Infringing Products in the United States. On information and belief, as alleged in this Complaint, Defendant had actual knowledge of the ’167 patent before the filing of this Complaint. Defendant actively promotes the sale, use, and importation of Defendant’s infringing spectral flow cytometry devices in marketing materials, technical specifications, data sheets, web pages on its websites, press releases, and user manuals, as well as at trade shows and through its sales and distribution channels that encourage infringing sales, offers to sell, and importation of the Infringing Products. (*See, e.g.*, Exs. 11-19.) By these actions, Defendant has had the specific intent to induce, or was willfully blind to inducing, infringement of the ’167 patent.

63. Defendant’s infringement has been willful and deliberate because, on information and belief, Defendant has known of, should have known of, and/or has been willfully blind to the ’167 patent and knew of, should have known of, and/or was willfully blind to its infringement but acted despite an objectively high likelihood that such acts would infringe the ’167 patent. Defendant’s willfulness is further shown by its copying and reverse-engineering of Cytek’s Aurora product as alleged in this Complaint.

64. As the direct and proximate result of Defendant's conduct, Cytek has suffered, and if Defendant's conduct is not enjoined, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial. Cytek and Defendant are direct competitors in the flow cytometry market, and Defendant's sale of infringing spectral flow cytometry products causes ongoing harm to Cytek's market position, customer relationships, and pricing power that cannot be adequately remedied by monetary damages alone. Because Cytek's remedy at law is inadequate, Cytek seeks, in addition to damages, injunctive relief. Cytek pioneered the spectral flow cytometry market through substantial investment in research and development, and Defendant's unauthorized use of Cytek's patented technology to compete in that same market causes continuing irreparable harm absent injunctive relief.

**COUNT 3**

**(INFRINGEMENT OF THE '868 PATENT)**

65. Plaintiff incorporates each of the above paragraphs as though fully set forth herein.

66. On information and belief, Defendant, directly or through the actions of its employees, agents, distributors, divisions, and/or subsidiaries, has infringed and continues to infringe one or more of the claims of the '868 patent, including at least claim 3 of the '868 patent, directly, indirectly, literally and/or by equivalents

under 35 U.S.C. §§ 1 *et seq.*, including, but not limited to, section 271 by, among other things, making, using (including during research and development activities and product testing), selling, supplying, offering for sale the Infringing Products in the United States and/or importing the Infringing Products into the United States, and/or inducing or contributing to such acts, without authority. To the extent Defendant asserts that any limitation is not literally met, any differences between the Infringing Products and the claims of the '868 patent are insubstantial and one or more elements of each of Defendant's Infringing Products matches the function, way, and result of that claim limitation.

67. For example, the Infringing Products meet each element of, and infringe, claim 3, which states (in independent form):

> An apparatus comprising:
>
> a first light detection module to demultiplex a first fluorescent light in a first range of wavelengths, the first light detection module including
>
> a first plurality of detectors in a first row;
>
> a first transparent block adjacent the first plurality of detectors,
>
> a first plurality of micro-mirrors coupled to a first side of the first transparent block, and
>
> a first plurality of filters in a first row coupled to a second side of the first transparent block opposite the first side, each of the first plurality of filters to reflect light to one of the first plurality of micro-mirrors and pass light of a different wavelength range towards one of the first plurality of detectors;

a second light detection module to demultiplex a second fluorescent light in a second range of wavelengths, the second light detection module including

a second plurality of detectors in a second row;

a second transparent block adjacent the second plurality of detectors,

a second plurality of micro-mirrors coupled to a first side of the second transparent block, and

a second plurality of filters in a second row coupled to a second side of the second transparent block opposite the first side, each of the second plurality of filters to reflect light to one of the second plurality of micro-mirrors and pass light of a different wavelength range towards one of the second plurality of detectors; and

an input channel coupled in light communication with the first light detection module and the second light detection module, the input channel to receive a fluorescent light beam and split it into the first fluorescent light in the first range of wavelengths and the second fluorescent light in the second range of wavelengths.

68. Defendant infringes each element of at least claim 3 of the ’868 patent. As an example, an infringement chart, detailing Defendant’s infringement of claim 3 of the ’868 patent, is attached as Exhibit 8. This chart is not intended to limit Cytek’s right to modify the chart or allege that other activities of Defendant infringe the identified claims or any other claims of the Asserted Patents. Exhibit 8 is hereby incorporated by reference in its entirety. Each claim element in Exhibit 8 that is mapped to the Infringing Products shall be considered an allegation within the

meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

69. Defendant also has actively, knowingly, and intentionally induced infringement of the ’868 patent under 35 U.S.C. § 271(b) and continues to actively, knowingly, and intentionally induce such infringement by actively encouraging others to make, use, offer to sell, sell, and/or import the Infringing Products in the United States. On information and belief, as alleged in this Complaint, Defendant had actual knowledge of the ’868 patent before the filing of this Complaint. Defendant actively promotes the sale, use, and importation of Defendant’s infringing spectral flow cytometry devices in marketing materials, technical specifications, data sheets, web pages on its websites, press releases, and user manuals, as well as at trade shows and through its sales and distribution channels that encourage infringing sales, offers to sell, and importation of the Infringing Products. (*See, e.g.*, Exs. 11-19.) By these actions, Defendant has had the specific intent to induce, or was willfully blind to inducing, infringement of the ’868 patent.

70. On information and belief, Defendant also contributes to infringement of the ’868 patent by others, by providing the Infringing Products, which are especially made or adapted for use to infringe one or more claims of the ’868 patent and are not staple articles of commerce suitable for substantial non-infringing use. For example, as detailed in the exemplary infringement charts provided with this

Complaint, (Ex. 8) claim 3 of the ’868 patent is infringed by the combination of Defendant’s mosaic products with Defendant’s CytoFLEX flow cytometer products. As alleged in this Complaint, when combined, the CytoFLEX+mosaic systems employ up to six lasers and up to 81 fluorescence detectors to provide spectral flow cytometry capabilities to users. Defendant’s mosaic products are especially made for or adapted for use to infringe the ’868 patent, and are not a staple article of commerce, and are not suitable for substantial non-infringing use. As alleged in this Complaint, Defendant has had actual knowledge of the ’868 patent, and has had actual knowledge that the Infringing Products are especially made and/or especially adapted for use in infringing the ’868 patent.

71. Defendant’s infringement has been willful and deliberate because, on information and belief, Defendant has known of, should have known of, and/or has been willfully blind to the ’868 patent and knew of, should have known of, and/or was willfully blind to its infringement but acted despite an objectively high likelihood that such acts would infringe the ’868 patent. Defendant’s willfulness is further shown by its copying and reverse-engineering of Cytek’s Aurora product as alleged in this Complaint.

72. As the direct and proximate result of Defendant’s conduct, Cytek has suffered, and if Defendant’s conduct is not enjoined, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be

proven at trial. Cytek and Defendant are direct competitors in the flow cytometry market, and Defendant's sale of infringing spectral flow cytometry products causes ongoing harm to Cytek's market position, customer relationships, and pricing power that cannot be adequately remedied by monetary damages alone. Because Cytek's remedy at law is inadequate, Cytek seeks, in addition to damages, injunctive relief. Cytek pioneered the spectral flow cytometry market through substantial investment in research and development, and Defendant's unauthorized use of Cytek's patented technology to compete in that same market causes continuing irreparable harm absent injunctive relief.

## COUNT 4

## (INFRINGEMENT OF THE '245 PATENT)

73. Plaintiff incorporates each of the above paragraphs as though fully set forth herein.

74. On information and belief, Defendant, directly or through the actions of its employees, agents, distributors, divisions, and/or subsidiaries, has infringed and continues to infringe one or more of the claims of the '245 patent, including at least claim 21 of the '245 patent, directly, indirectly, literally and/or by equivalents under 35 U.S.C. §§ 1 *et seq.*, including, but not limited to, section 271 by, among other things, making, using (including during research and development activities and product testing), selling, supplying, offering for sale the Infringing Products in

the United States and/or importing the Infringing Products into the United States, and/or inducing or contributing to such acts, without authority. To the extent Defendant asserts that any limitation is not literally met, any differences between the Infringing Products and the claims of the '245 patent are insubstantial and one or more elements of each of Defendant's Infringing Products matches the function, way, and result of that claim limitation.

75. For example, the Infringing Products meet each element of, and infringe, claim 21, which states (in independent form):

> A flow cytometry system, comprising:
>
> a laser system for emitting laser beams;
>
> a flow cell assembly positioned to receive the laser beams at an interrogation region of a fluidics stream where fluoresced cells scatter the laser beams into fluorescent light;
>
> a fiber assembly positioned to collect the fluorescent light; and
>
> a receiver assembly positioned to receive the fluorescent light from the fiber assembly, wherein the receiver assembly includes
>
> a photodiode detector array positioned to receive the fluorescent light, wherein the photodiode detector array includes a plurality of channels;
>
> trans-impedance amplifier circuits configured to convert input current from the photodiode detector array into an output voltage signal for each channel of the plurality of channels in the photodiode detector array; and
>
> analog-to-digital converters coupled to the trans-impedance amplifier circuits, wherein each trans-impedance amplifier circuit is coupled to a different analog-to-digital converter;

wherein the photodiode detector array comprises a plurality of avalanche photodiodes (APD); and

wherein the detector array size is at least sixteen channels.

76. Defendant infringes each element of at least claim 21 of the '245 patent. As an example, infringement charts, detailing Defendant's infringement of claim 21 of the '245 patent, are attached as Exhibits 9-10. These charts are not intended to limit Cytek's right to modify the charts or allege that other activities of Defendant infringe the identified claims or any other claims of the Asserted Patents. Exhibits 9-10 are hereby incorporated by reference in their entirety. Each claim element in Exhibits 9-10 that is mapped to the Infringing Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

77. Defendant also has actively, knowingly, and intentionally induced infringement of the '245 patent under 35 U.S.C. § 271(b) and continues to actively, knowingly and intentionally induce such infringement by actively encouraging others to make, use, offer to sell, sell, and/or import the Infringing Products in the United States. On information and belief, as alleged in this Complaint, Defendant had actual knowledge of the '245 patent before the filing of this Complaint. Defendant actively promotes the sale, use, and importation of Defendant's infringing spectral flow cytometry devices in marketing materials, technical specifications, data sheets, web pages on its websites, press releases, and user manuals, as well as

at trade shows and through its sales and distribution channels that encourage infringing sales, offers to sell, and importation of the Infringing Products. (*See, e.g.*, Exs. 11-19.) By these actions, Defendant has had the specific intent to induce, or was willfully blind to inducing, infringement of the '245 patent.

78. On information and belief, Defendant also contributes to infringement of the '245 patent by others, by providing the Infringing Products, which are especially made or adapted for use to infringe one or more claims of the '245 patent and are not staple articles of commerce suitable for substantial non-infringing use. For example, as detailed in the exemplary infringement charts provided with this Complaint, (Exs. 9, 10) claim 21 of the '245 patent is infringed by the combination of Defendant's mosaic products with Defendant's CytoFLEX flow cytometer products. As alleged in this Complaint, when combined, the CytoFLEX+mosaic systems employ up to six lasers and up to 81 fluorescence detectors to provide spectral flow cytometry capabilities to users. Defendant's mosaic products are especially made for or adapted for use to infringe the '245 patent, and are not a staple article of commerce, and are not suitable for substantial non-infringing use. As alleged in this Complaint, Defendant has had actual knowledge of the '245 patent, and has had actual knowledge that the Infringing Products are especially made and/or especially adapted for use in infringing the '245 patent.

79. Defendant's infringement has been willful and deliberate because, on information and belief, Defendant has known of, should have known of, and/or has been willfully blind to the '245 patent and knew of, should have known of, and/or was willfully blind to its infringement but acted despite an objectively high likelihood that such acts would infringe the '245 patent. Defendant's willfulness is further shown by its copying and reverse-engineering of Cytek's Aurora product as alleged in this Complaint.

80. As the direct and proximate result of Defendant's conduct, Cytek has suffered, and if Defendant's conduct is not enjoined, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial. Cytek and Defendant are direct competitors in the flow cytometry market, and Defendant's sale of infringing spectral flow cytometry products causes ongoing harm to Cytek's market position, customer relationships, and pricing power that cannot be adequately remedied by monetary damages alone. Because Cytek's remedy at law is inadequate, Cytek seeks, in addition to damages, injunctive relief. Cytek pioneered the spectral flow cytometry market through substantial investment in research and development, and Defendant's unauthorized use of Cytek's patented technology to compete in that same market causes continuing irreparable harm absent injunctive relief.

## COUNT 5

## (BREACH OF CONTRACT UNDER CALIFORNIA LAW – AURORA CONTRACT)

81. Plaintiff incorporates each of the above paragraphs as though fully set forth herein.

82. Plaintiff and Defendant entered into the Aurora Contract, a valid and legally binding contract, no later than October 14, 2020. The Aurora Contract was formed by Cytek's September 9, 2020 quotation and Defendant's October 14, 2020 purchase order affirmatively accepting that quotation. Defendant received consideration for its acceptance of the Aurora Contract in the form of the Aurora system and associated products, software, and services.

83. The Aurora Contract is governed by California law. (Ex. 40, DTX-2447.0006 (§ 21).)

84. Under the terms of the Aurora Contract, Defendant was prohibited from using the products, software, and services purchased under that contract for any commercial purposes, and was prohibited from engaging in any copying or reverse engineering activities:

> **DENOVO SOFTWARE USE.** This product is limited to your use for internal, noncommercial purposes— you may not use the product in connection with any commercial activities, which include (without limitation) use of the product in connection with any services that you to your clients or customers that you are compensated for regardless of the manner in which you are compensated by those clients or

> customers. You may not use the product to provide services to any third parties, or otherwise use the product for commercial purposes.
>
> **RESTRICTED USE.** This product is limited to your use for internal, noncommercial purposes— you may not use the product in connection with any commercial activities, which include (without limitation) use of the product in connection with any services that you to your clients or customers that you are compensated for regardless of the manner in which you are compensated by those clients or customers. You may not use the product to provide services to any third parties, or otherwise use the product for commercial purposes. **In addition, you may not, and may not authorize or permit any affiliate or third party to, gain access to or determine the methods of operation of the product, alter, modify, disassemble, dismantle, deconstruct, analyze, determine compositions or structures, design around, or reverse engineer the product, or any part of the product, nor attempt to, or use the product to, refurbish, reconstruct, create, develop or contract to develop a product similar to the product.**

(Ex. 40, DTX-2447.0005-0006 (§§ 20, 22) (red coloration in original).)

85. Defendant has breached its obligations to Cytek under the Aurora Contract. For example, Defendant violated the Restricted Use provision of the Aurora Contract by gaining access to and determining the methods of operation of the Aurora, disassembling and analyzing the Aurora and its optical components, and reverse engineering features of the Aurora, including its unmixing algorithm and detector channel bin widths. On information and belief, Defendant further violated the Restricted Use provision by using the Aurora to develop a product similar to the Aurora, namely the Infringing Products. Defendant also violated the Denovo Software Use and Restricted Use provisions of the Aurora Contract by using the

Cytek Aurora products, software, and services governed by the Aurora Contract for commercial purposes, in breach of the Aurora Contract.

86. Defendant's breaches were continuing. On information and belief, Defendant continued to use the Aurora, and information obtained in violation of the Restricted Use provision, to develop the Infringing Products through at least their launch in March 2025. Defendant's breaching conduct occurred internally and was not disclosed to Cytek. Cytek did not learn, and could not reasonably have learned, of Defendant's breaches until Defendant's internal documents were disclosed at trial in *Beckman Coulter, Inc. v. Cytek Biosciences, Inc.*, C.A. No. 24-945 (CFC) (D. Del.), in August 2026. Under the terms of the Protective Order entered in that case, information designated as protected could only be used "solely for the purposes [of] prosecuting, defending, or attempting to settle this Action, any related appellate proceeding, and not for any other purpose whatsoever, including without limitation any other litigation, Patent Prosecution, acquisition, any other legal proceeding, any communication with any regulatory agency, or any other business or competitive purpose or function, except as permitted by order of court, or as agreed by the Parties." (*Id.*, D.I. 40 ¶ 15.) Further, documents produced from Defendant's files and marked "Highly Confidential – Outside Attorneys' Eyes Only" were not permitted to be disclosed to Cytek. (*Id.* ¶ 35.) Cytek could not have discovered Defendant's breaches earlier, despite exercising reasonable diligence, at least

because Defendant's breaches were inherently undiscoverable and were concealed from Cytek.

87. Cytek has fully performed or tendered all obligations and performance required under the Aurora Contract.

88. Defendant's breach of the agreement was deliberate, calculated, and opportunistic, undertaken for the purpose of securing a financial windfall that would have been unattainable absent Defendant's breach of the terms of the contract.

89. As a result of Defendant's breach of contract, Cytek has incurred damages including, but not limited to, lost profits, loss of competitive advantage, and the value of the rights Defendant took in breach of the Restricted Use provision, including the right to analyze and reverse engineer the Aurora, which Cytek would not have granted to a competitor. In addition or in the alternative, Cytek is entitled to disgorgement of all profits, gains, and cost savings Defendant obtained through its deliberate breach.

## COUNT 6

## (BREACH OF CONTRACT UNDER CALIFORNIA LAW – SPECTROFLO CONTRACT)

90. Plaintiff incorporates each of the above paragraphs as though fully set forth herein.

91. The SpectroFlo Contract is governed by California law. (Ex. 45 § 9.7.)

92. Under the terms of the SpectroFlo Contract, Cytek provided a limited license grant to Defendant:

> **LICENSE GRANT**. Subject to the terms and conditions of this Agreement, Cytek Bio grants to Customer a non-exclusive, non-transferable (except as permitted under Section 9.4), worldwide, perpetual (for the duration of any Intellectual Property Rights therein) and irrevocable (unless terminated under Section 8.2), fully paid and royalty-free license to (i) use the SpectroFlo Software on the Instrument, and (ii) install or download one (1) copy of the SpectroFlo Software on one (1) computer, all solely for Customer's internal business purposes and solely in accordance with the Documentation.

(Ex. 45 § 2.)

93. Under the terms of the SpectroFlo Contract, Defendant agreed to license restrictions, including agreeing to provisions prohibiting reverse engineering and prohibiting any uses of the SpectroFlo Software not expressly allowed under Section 2 ("License Grant") of the SpectroFlo Contract:

> **LICENSE RESTRICTIONS**. Customer acknowledges that the SpectroFlo Software and its structure, organization, and Source Code constitute valuable trade secrets of Cytek Bio and its suppliers. Accordingly, Customer agrees not to (a) modify, adapt, alter, translate, or create derivative works from the SpectroFlo Software; (b) merge the SpectroFlo Software with other software; (c) sublicense, lease, rent, loan, or otherwise transfer (except in connection with an assignment of Customer's rights permitted under Section 9.4) the SpectroFlo Software to any third party, (d) use the SpectroFlo Software in any service bureau or time-sharing arrangement, (e) reverse engineer, decompile, disassemble, or otherwise attempt to derive the Source Code for the SpectroFlo Software; or (f) otherwise use or copy the SpectroFlo Software except as expressly allowed under Section 2.

(Ex. 45 § 3.)

94. Plaintiff and Defendant entered into the SpectroFlo Contract, a valid and legally binding contract, in or around October 2020, when Defendant affirmatively agreed to its terms in connection with the installation of Cytek's proprietary SpectroFlo software for use with Cytek's Aurora system. Defendant received consideration for its acceptance of the SpectroFlo Contract in the form of a license to access and use Cytek's SpectroFlo software. The SpectroFlo Contract is a separate agreement governing Defendant's use of the SpectroFlo software, and its restrictions are consistent with those of the Aurora Contract.

95. Defendant has breached its obligations to Cytek under the SpectroFlo Contract. For example, Defendant violated the SpectroFlo Contract by using the Cytek SpectroFlo software governed by the SpectroFlo Contract for unauthorized purposes such as reverse engineering, in breach of the SpectroFlo Contract.

96. Defendant's breaches were continuing. On information and belief, Defendant continued to use the SpectroFlo software, and information obtained in violation of the License Restrictions provision, to develop the Infringing Products through at least their launch in March 2025. Defendant's breaching conduct occurred internally and was not disclosed to Cytek. Cytek did not learn, and could not reasonably have learned, of Defendant's breaches until Defendant's internal documents were disclosed at trial in *Beckman Coulter, Inc. v. Cytek Biosciences, Inc.*, C.A. No. 24-945 (CFC) (D. Del.), in August 2026. Under the terms of the

Protective Order entered in that case, information designated as protected could only be used "solely for the purposes [of] prosecuting, defending, or attempting to settle this Action, any related appellate proceeding, and not for any other purpose whatsoever, including without limitation any other litigation, Patent Prosecution, acquisition, any other legal proceeding, any communication with any regulatory agency, or any other business or competitive purpose or function, except as permitted by order of court, or as agreed by the Parties." (*Id.*, D.I. 40 ¶ 15.) Further, documents produced from Defendant's files and marked "Highly Confidential – Outside Attorneys' Eyes Only" were not permitted to be disclosed to Cytek. (*Id.* ¶ 35.) Cytek could not have discovered Defendant's breaches earlier, despite exercising reasonable diligence, at least because Defendant's breaches were inherently undiscoverable and were concealed from Cytek.

97. Cytek has fully performed or tendered all obligations and performance required under the SpectroFlo Contract.

98. Defendant's breach of the agreement was deliberate, calculated, and opportunistic, undertaken for the purpose of securing a financial windfall that would have been unattainable absent Defendant's breach of the terms of the contract.

99. As a result of Defendant's breach of contract, Cytek has incurred damages including, but not limited to, lost profits, loss of competitive advantage, and the value of the rights Defendant took in breach of the License Restrictions

provision, including the right to analyze and reverse engineer the SpectroFlo software, which Cytek would not have granted to a competitor. In addition or in the alternative, Cytek is entitled to disgorgement of all profits, gains, and cost savings Defendant obtained through its deliberate breach.

**COUNT 7**

**(UNJUST ENRICHMENT)**

100. Plaintiff incorporates paragraphs 1 through 33 as though fully set forth herein. This claim is pleaded in the alternative to Counts 5 and 6.

101. Cytek conferred a benefit on Defendant by providing it with the Aurora system and SpectroFlo software, which Cytek provided subject to restrictions prohibiting their use to analyze, reverse engineer, or develop a similar product. Defendant knowingly used the Aurora system and SpectroFlo software to analyze, reverse engineer, and benchmark Cytek's technology in developing the Infringing Products. Defendant thereby obtained benefits at Cytek's expense, including avoided research and development time and costs, a head start in developing and commercializing the Infringing Products, and the profits attributable to those uses.

102. It would be unjust for Defendant to retain these benefits, which it obtained by knowingly using the Aurora system and SpectroFlo software for purposes Cytek prohibited and would never have permitted a competitor to pursue. Cytek is entitled to restitution of the benefits Defendant unjustly obtained, in an

amount to be proven at trial, and/or the imposition of a constructive trust over identifiable proceeds of those benefits in Cytek's favor.

## DEMAND FOR JURY TRIAL

103. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Cytek respectfully demands a trial by jury on all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Cytek prays that this Court enter judgment that:

A. Defendant has infringed the Asserted Patents;

B. Plaintiff is entitled to permanent injunctive relief enjoining Defendant, its officers, agents, servants, and employees, and those persons in active concert or participation with any of them, from manufacturing, using, offering for sale, selling in the United States, or importing into the United States, the Infringing Products, and any other product that infringes or induces or contributes to the infringement of the Asserted Patents, prior to the expiration date of the last to expire of those patents;

C. Plaintiff is entitled to an award of damages adequate to compensate for Defendant's infringement pursuant to 35 U.S.C. § 284, including lost profits or, at a minimum, a reasonable royalty, as well as pre-judgment and post-judgment interest;

D. Defendant's infringement of the Asserted Patents has been and continues to be willful;

E. Plaintiff is entitled to enhanced damages up to and including trebling

of the damages awarded to it;

F. Plaintiff is entitled to costs and reasonable expenses to the fullest extent permitted by law;

G. This case is exceptional pursuant to 35 U.S.C. § 285, and Plaintiff is entitled to an award of attorneys' fees;

H. The Aurora Contract is valid and enforceable;

I. Defendant materially breached its obligations under the Aurora Contract;

J. Plaintiff suffered harm as a result of Defendant's material breach of the Aurora Contract;

K. Plaintiff is entitled to actual damages for Defendant's material breach of the Aurora Contract, together with pre-judgment and post-judgment interest;

L. In addition or in the alternative, Plaintiff is entitled to disgorgement of all profits, gains, and cost savings wrongfully obtained by Defendant as a direct and proximate result of its deliberate breach of the Aurora Contract;

M. The SpectroFlo Contract is valid and enforceable;

N. Defendant materially breached its obligations under the SpectroFlo Contract;

O. Plaintiff suffered harm as a result of Defendant's material breach of the SpectroFlo Contract;

P. Plaintiff is entitled to actual damages for Defendant's material breach of the SpectroFlo Contract, together with pre-judgment and post-judgment interest;

Q. In addition or in the alternative, Plaintiff is entitled to disgorgement of all profits, gains, and cost savings wrongfully obtained by Defendant as a direct and proximate result of its deliberate breach of the SpectroFlo Contract;

R. In the alternative, Plaintiff is entitled to restitution of the benefits Defendant unjustly obtained through its use of the Aurora system and SpectroFlo software, together with an accounting of those benefits;

S. In the alternative, Plaintiff is entitled to a constructive trust over identifiable proceeds of the benefits Defendant unjustly obtained through its use of the Aurora system and SpectroFlo software; and

T. Plaintiff is entitled to other and further relief as the Court may deem just and proper.

| | |
|---|---|
| OF COUNSEL:<br><br>Reuben H. Chen<br>Daniel J. Knauss<br>HanByul Chang<br>COOLEY LLP<br>3175 Hanover Street<br>Palo Alto, CA 94304<br>(650) 843-5000<br><br>Stephen Smith<br>Adam Pivovar<br>Dustin Knight<br>COOLEY LLP<br>1299 Pennsylvania Avenue NW,<br>Suite 700<br>Washington, DC 20004<br>(202) 842-7800 | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Jeremy A. Tigan*<br><br>Karen Jacobs (#2881)<br>Jeremy A. Tigan (#5239)<br>Cameron P. Clark (#6647)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>kjacobs@morrisnichols.com<br>jtigan@morrisnichols.com<br>cclark@morrisnichols.com<br><br>*Attorneys for Plaintiff* |

November 9, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on November 9, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on November 9, 2026, upon the following in the manner indicated:

Frederick L. Cottrell III *VIA ELECTRONIC MAIL*
Kelly E. Farnan
Christine D. Haynes
RICHARDS, LAYTON & FINGER P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
*Attorneys for Defendant*

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)